O'Daniel, Appellee, *v.* Ohio State Racing Commission, Appellant.

[Cite as O'Daniel v. Racing Comm. (1974), 37 Ohio St. 2d 87.]

(No. 73-731—Decided February 20, 1974.)

90

*Messrs. Spieth, Bell, McCurdy & Newell, Mr. Lawrence I. Byrnes* and *Mr. Phillip J. Campanella,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Robert J. Walter,* for appellant.

WILLIAM B. BROWN, J. The principal question presented in this case is whether RC-13-02, the "insurer rule" of the Rules of Racing of the Ohio State Racing Commission, which imposes strict accountability upon a trainer for the condition of the horse he enters in a race, is constitutional, valid and within the scope of authority granted the Ohio State Racing Commission by the General Assembly.

The Ohio insurer rule essentially imposes liability, without fault, upon a trainer of record who enters into a race a horse which has been administered any chemical or drug.

Many states have promulgated similar insurer rules; six of these jurisdictions have judicially scrutinized the rule's validity. One line of cases holds the insurer rule constitutional and valid as an imposition of liability, without fault, in a business requiring strong police measures for the public safety and welfare. *Jamison* v. *State Racing Comm.* (1973), 84 N. M. 679, 507 P. 2d 426; *Sanderson* v. *New Mexico State Racing Comm.* (1969), 80 N. M. 200, 453 P. 2d 370; *Sandstrom* v. *California Horse Racing Board* (1948), 31 Cal. 2d 401, 189 P. 2d 17, certiorari denied, 335 U. S. 814; *State, ex rel. Morris,* v. *West Virginia Racing Comm.* (1949), 133 W. Va. 179, 55 S. E. 2d 263.

On the other hand, a divergent line of cases finds the insurer rule an unconstitutional denial of due process, and requires either an actual showing of trainer negligence, or proof that the trainer administered, or permitted admin-

istration of, a substance known to affect the horse's performance, before liability may be imposed. *State, ex rel. Paoli,* v. *Baldwin* (1947), 159 Fla. 165, 31 So. 2d 627; *Mahoney* v. *Byers* (1946), 187 Md. 81, 48 A. 2d 600; and *Brennan* v. *Illinois Racing Board* (1969), 42 Ill. 2d 352, 247 N. E. 2d 881.

However, as applied to the facts of this case, those three divergent cases are not persuasive. The *Baldwin* and *Mahoney* cases were aptly distinguished in *Sandstrom* v. *California Horse Racing Board, supra* (31 Cal. 2d 401), at 411, as follows:

"* * * The rule considered in *Mahoney* v. *Byers, supra* * * * substituted an irrebuttable presumption for an essential fact. Thus evidence was made conclusive which was not so of its own nature and inherent force. In the case at bar liability is not predicated on administration of the drug nor on the failure to exercise due care, and the presence or absence thereof would neither add nor detract. *State* v. *Baldwin, supra* * * * would at first appear persuasive since Rule 117, there considered, somewhat parallels Rule 313[4] now under attack. But that case did not consider the power of a state to impose strict liability, the existence of which is the fundamental basis of our determination. Also, it would appear that the decision in the *Baldwin* case was influenced decisively by analogy to *Mahoney* v. *Byers, supra* * * * where the mechanics rested in the employment of a presumption as conclusive evidence."

The majority in the third case, *Brennan* v. *Illinois Racing Board, supra,* relied solely upon the soundly distinguished cases of *Mahoney* v. *Byers* and *State, ex rel. Paoli,* v. *Baldwin,* and made no attempt to reconcile those cases with the contrary line of authority from other jurisdictions.

A strong dissent in *Brennan,* at page 361, pointedly explained that the court in *State, ex rel. Paoli,* v. *Baldwin* initially *upheld* the insurer rule, but upon rehearing, in

---

[4]Ohio Rule RC-13-02 is similar to Rule 313.

light of the recently decided *Mahoney* case, the court applied the reasoning of the *Mahoney* case to invalidate the Florida insurer rule, and that ten years later the Maryland court in *Maryland Racing Commission* v. *McGee* (1957), 212 Md. 69, 128 A. 2d 419, "distinguished the *Mahoney* case and sustained the validity of a rule which imposed an absolute liability upon the trainer to so guard his horses that no drug could be administered."

Thus, the weight of reasoned authority sustains the validity and constitutionality of the insurer rule.

Horse racing is a sizeable enterprise in Ohio. This state has more thoroughbred racing dates than any other state, and is second only to New York in harness racing dates. Hoffheimer, Some Horse-Racing Tips for Lawyers, 50 A. B. A. J. 250 (March 1964). It is much too late in our constitutional history to dwell long upon the obviously sweeping powers of the state to regulate an activity of this kind. Cf. *State* v. *Morello* (1959), 169 Ohio St. 213, 216; *Goesaert* v. *Cleary* (1948), 335 U. S. 464 (liquor traffic); *Kotch* v. *Bd. of River Port Pilot Commr's.* (1947), 330 U. S. 552 (pilotage). The scope of occupational licensing and supervision must vary, of course, with the nature of the business and its impacts. *Kotch* v. *Bd. of River Port Pilot Commr's., supra,* at 564; *Dent* v. *West Virginia* (1889), 129 U. S. 114 (practice of medicine). Whether the variations be deemed differences of kind or merely of "degree" (*Barsky* v. *Bd. of Regents* [1954], 347 U. S. 442, 473, Douglas, J., dissenting), it is plain that some fields of activity, including the one before us, are subject to the exercise of broad powers for the determination and application of state policy judgments. *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31, 34 (liquor traffic); *State* v. *Kelly* (1896), 54 Ohio St. 166, 178 (adulterated food).

A state's regulatory power over horse racing is described by Justice Harlan in *Western Turf Assn.* v. *Greenberg* (1907), 204 U. S. 359, 363, as follows:

"* * * Decisions of this court, familiar to all, and which need not be cited, recognize the possession, by each

state, of powers never surrendered to the general government; which powers the state, except as restrained by its own constitution or the Constitution of the United States, may exert not only for the public health, the public morals and the public safety, but for the general or common good, for the well-being, comfort and good order of the people. The enactments of a state, when exerting its power for such purposes must be respected by this court, if they do not violate rights granted or secured by the Supreme Law of the land.''

The Court of Common Pleas and the Court of Appeals refused to uphold the commission's finding that Rule RC-13-02 had been violated for these reasons: (1) O'Daniel was not ''shown to have ordered, participated in, consented to or even to have known of the administration of the drugs to the two horses'' and (2) since oxyphenbutazone is a drug which operates to reduce or eliminate pain, there was ''no evidence that, these horses, not then suffering pain, would be affected by this drug.'' However, rule RC-13-02 imposes accountability, without fault or knowledge, upon a trainer whose horse has been administered *any* chemical or drug.

Since we have determined that horse racing is one of those fields subject to extraordinarily broad regulatory powers, we hold that Rule RC-13-02, of the Rules of Racing promulgated by the Ohio State Racing Commission, which imposes strict accountability upon a trainer for the condition of the horse he enters in a race, is not unconstitutional, void or beyond the scope of authority granted the commission by the General Assembly pursuant to R. C. 3769.03.

Appellee asserts, however, that his license was suspended without that procedural due process required by the Fourteenth Amendment to the United States Constitution. This assertion must fail because it misinterprets the due process guaranty. It is true that the suspension of a trainer's license is a grievous loss. Accordingly, a fair hearing to determine a violation of trainer rules is constitution-

ally required, in the absence of an emergency, before sanctions can issue against the trainer. *Bell* v. *Burson* (1971), 402 U. S. 535 (a hearing to determine fault is required prior to driver's license suspension); *Goldberg* v. *Kelly* (1970), 397 U. S. 254 (a hearing is required prior to termination of welfare benefits). Here, appellee was afforded a hearing on February 25, 1972, before the board of stewards at Raceway Park, and was further afforded a full and fair *de novo* hearing before the Racing Commission. Due process requires no more.

Also, appellee seeks to raise objections in this court to the introduction of evidence in the hearings below. These questions were not raised in the Court of Appeals, and therefore, we do not choose to entertain those collateral matters, but limit ourselves to the question certified to this court by the Court of Appeals. *State, ex rel. Wallace,* v. *Celina* (1972), 29 Ohio St. 2d 109, 113.

The judgment of the Court of Appeals is affirmed insofar as it held that "the violation of Rule RC-11-10 is established by reliable, probative and substantial evidence," and is reversed as to the balance of its judgment.

*Judgment affirmed in part and reversed in part.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.