IN THE MATTER OF THE APPLICATION BY BLUE CROSS HOSPITAL PLAN, INC., FOR CHANGE OF RATES FOR DIRECT-PAY SUBSCRIBERS: BLUE CROSS HOSPITAL PLAN, INC., APPELLEE, *v.* JUMP,[1] SUPT. OF INSURANCE, APPELLANT.

(No. 74-1115—Decided November 26, 1975.)

---

[1]Pursuant to Civ. R. 25(D)(1), and upon motion by the Attorney General, Harry Jump is hereby substituted for Kenneth E. DeShetler as appellant, Superintendent of Insurance.

*Amerman, Burt & Jones Co., L. P. A.*, and *Mr. Edgar W. Jones*, for appellee.

*Mr. William J. Brown*, attorney general, *Messrs. Brown & Brown* and *Mr. David N. Brown*, for appellant.

*Per Curiam.* The question presented is whether the order of the Superintendent was supported by reliable, probative, and substantial evidence and was in accordance with law. R. C. 119.12.

The order appealed from issued from an adjudicatory proceeding under R. C. 1739.051 which reads:

"If an association desires to:

"(A) Enter into or amend any contractual relationship with any nonprofit hospital, skilled nursing facility, or a home health agency;

"(B) Issue or amend any subscriber contract for such services;

"(C) Establish or change any group rating experience formula used in determining a group rate charged for a group subscriber contract;

"(D) Establish or change any rate charged for any subscriber contract, other than a group rate for group subscriber contracts determined in accordance with a group rating experience formula which has been approved by the Superintendent of Insurance;

"A copy of the proposed contract, amendment, formula, or rate shall be filed with the Superintendent of Insurance and shall not be effective until the expiration of ninety days after the filing thereof unless he shall sooner give to such association his written approval thereto. If the superintendent is not satisfied within such ninety day period, that any such contract, amendment, formula, or rate is lawful, fair, and reasonable, he shall either so notify such association and it shall thereafter be unlawful for

such association to use any such contract, amendment, formula, or rate, or he shall set a date and time for a public hearing to commence no later than ninety days after receipt of said filing. The superintendent shall give public notice of any such hearing. He may also require the association to give public notice of such hearing.

"The superintendent may retain at the association's expense such attorneys, actuaries, accountants, and other experts not otherwise a part of the superintendent's staff as shall be reasonably necessary to assist in the conduct of any public hearing under this section. Such expenses shall not exceed an amount equal to one-hundredth of one per cent of the sum of premiums earned plus net realized investment gain or loss of such association as reflected in the most current annual statement on file with the superintendent. Any person retained shall be under the direction and control of the superintendent and shall act in a purely advisory capacity. The superintendent shall, within thirty days after the commencement of a hearing issue an order either approving any such contract, amendment, formula, or rate if he finds it to be lawful, fair, and reasonable, or disapproving any such contract, amendment, formula, or rate if he finds it otherwise. At any time the Superintendent of Insurance may, upon at least ninety days written notice to such association, withdraw his approval of any contract, amendment, formula, or rate thereof on any of the grounds stated in this section. Such disapproval shall be effected by written order which shall state the grounds for disapproval.

"Any action taken or order issued by the superintendent pursuant to this section may be appealed by the association as provided for in Section 119.12 of the Revised Code."

Although the stated basis for appellant's denial of a requested rate increase, that Blue Cross has not attempted to control rising hospital costs, may be relevant in the granting of a certificate of authority or license to a hospital service association pursuant to R. C. 1739.05, which we do

not now decide, the connection between it and the denial of the subject rate increase is not apparent.[2]

The Superintendent is required to approve a rate increase "if he finds it to be lawful, fair, and reasonable."

In support of its application for an increase in rates, Blue Cross introduced evidence which showed that since the last change in rates, it had lost substantial amounts of money on its contracts. Specifically, the loss from January 1, 1968, through December 31, 1971, was $706,639; and for the first six months of 1972 was $124,142. This evidence was undisputed. Testimony and a report from appellee's actuarial firm showed the necessity of increasing the rates for single contracts and for family contracts.

All evidence adduced by Blue Cross tends to show the fairness, reasonableness and lawfulness of its requested increase, whereas evidence adduced by appellant tends to show the lack of cost restraints on hospitals.

Resultantly, appellant's failure to find that the requested rate increase was lawful, fair and reasonable, was not supported by the evidence. Upon that basis, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissenting. The majority holds that the test for a change (increase) in subscriber rates under R. C. 1739.051 is satisfying the Superintendent of Insurance that such increase is "lawful, fair and reasonable." In this case, the rate increase was denied because the superintendent determined that "Blue Cross had not acted to

---

[2]Subsequent to the commencment of this cause, the Superintendent of Insurance, pursuant to R. C. 3901.041 and the Administrative Procedure Act, promulgated Rule IN-1739-01, effective October 1, 1974.

The application and validity of that rule are questions not presently before this court.

control hospital costs" and "that there has been an unjustifiable rise in the per diem costs of hospital rooms." The superintendent further found that the one hundred per cent formulae acted as a spur to costs and that Blue Cross was aware of this incongruous arrangement. The majority opinion implies that while Blue Cross' failure to attempt to control rising hospital costs may be relevant in the granting of authority or license to a hospital service association under R. C. 1739.05, its connection in the present circumstance "is not apparent." It seems clear enough to this writer that where the evidence discloses that the applicant is making no effort to stem the tide of rampaging costs but by their admission is condoning them by the "one hundred per cent reimbursement formulae" then their application to further increase subscribers rates is neither "fair" nor "reasonable" and is "unlawful."

R. C. Chapter 1739 gives the Superintendent of Insurance broad regulatory powers over the subscription contracts between Blue Cross and its subscribers—the general public. It is the duty of the Superintendent of Insurance to protect the public interest because Blue Cross operates under a government franchise in a semi-monopolistic industry. When, other than in a rate making proceeding can the public interest be better protected?

Traditionally, in Ohio, the office of the Superintendent of Insurance has been treated as a "rate increase filing clerk" with little or no discretion but to act as a rubber stamp. It is truly unfortunate that, when a superintendent with fortitude comes along, his decision, sounding clearly in the public interest, is blithely discarded.

It is encouraging to see in the footnote of the majority opinion that the Insurance Department has adopted Rule IN-1739-01 which became effective during the pendency of this action. This rule contains some sound economical standards in the field of cost constraints that will slow the spiralling hospital expenses.