DEWBRE, APPELLANT, *v.* OHIO STATE RACING COMMISSION, APPELLEE.

(No. CA83-03-005—Decided March 12, 1984.)

*Mr. Michael T. Brandt,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. William J. McDonald,* for appellee.

JONES, J. This appeal arises from a decision of the Ohio State Racing Commission (hereinafter "the commission") to suspend and revoke a license for a one-year period. Chet Dewbre, appellant herein, was a trainer, owner, breeder and driver of standardbred horses for nineteen years prior to the incident which led to his suspension. In the summer of 1982, Dewbre received stall space, such area being known as Dewbre Stables, at Scioto Downs. Dewbre

employed two trainers at his stables, Tim McCoy and Jim Zarley.

Kenneth Glispie owned a horse named Pearl's Son. In the spring of 1982, Glispie turned Pearl's Son over to Dewbre to train the horse on Dewbre's farm located near London. From there, Dewbre moved the horse to the Madison County Fairgrounds for further preparation for the summer racing season. In June, Pearl's Son was moved to Scioto Downs and placed in Dewbre Stables.

On June 10, Dewbre qualified Pearl's Son to race at Scioto Downs. Having qualified the horse, Dewbre went out of town. While he was away, McCoy entered the horse in a June 17 race. Dewbre returned to the track on June 17 and drove Pearl's Son to a second place finish. A post-race urinalysis conducted on the horse revealed the presence of hydromorphone.

On June 25, the Board of Stewards at Scioto Downs conducted a hearing, determined that Dewbre should be suspended, and referred the matter to the commission. The commission held a hearing on July 22, 1982. The hearing examiner found Dewbre to be the "captain of the ship" and held that he was responsible for Pearl's Son as the trainer. The referee recommended that Dewbre be suspended and that his license be revoked for a one-year period, which recommendation was adopted and followed by the commission. After the commission's decision was appealed to, and affirmed by, the Madison County Court of Common Pleas, Dewbre filed his notice of appeal.

Dewbre's first assignment of error states that:

"The trial court prejudicially erred in sustaining the findings of fact and conclusions of law of the referee and commission by holding that the commission's order was supported by reliable, probative, and substantial evidence and was in accordance with law."

The record indicates that Dewbre was suspended pursuant to Ohio Adm. Code 3769-13-02. That rule reads in part as follows:

"(A) The trainer shall be the absolute insurer of, and responsible for, the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of urine, or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-13-01 of the Administrative Code, the trainer of the horse, may, in the discretion of the commission, be subjected to the penalties provided in paragraph (B) of this rule. * * *

"(B) * * * The commission may on its own motion, or in addition to any penalty assessed by the judges or stewards, revoke or suspend any Ohio state racing commission license held by any person who violates this rule and/or rule off for a period of up to one year and/or refuse to grant a license to any person who violates this rule."

On June 15, while Dewbre was out of town, Pearl's Son developed a choke condition. A veterinarian was summoned and he treated the horse on June 15 and June 16, administering Dilaudid which contains hydromorphone, a restricted narcotic. The evidence also shows that the racing program printed for the June 17 races listed Dewbre as the trainer of Pearl's Son although Dewbre refused to stipulate to the listings being correct. It is Dewbre's contention that McCoy rather than Dewbre was the actual trainer of Pearl's Son on June 17 and it was therefore improper to hold Dewbre liable under the "absolute insurer" rule.

When an administrative decision is reviewed by a court of common pleas acting in the role of an appellate court, the court may affirm the order of the administrative agency "* * * if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the [ad-

ministrative] order is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *" R.C. 119.12. See, also, *In re Blue Cross* (1974), 44 Ohio App. 2d 375, 382 [73 O.O.2d 418], affirmed (1975), 44 Ohio St. 2d 78. "Ordinary meaning attaches to the terms reliable, probative, and substantial, that is, dependable, more than superficial or speculative, and having substance or body, giving it weight and quality which entitles it to credence. * * *" *Robinson* v. *Whitman* (1975), 47 Ohio App. 2d 43, 54 [1 O.O.3d 177].

A threshold legal issue involved in this case is the determination of what constitutes being a "trainer" or "training" a horse under the commission's rules and regulations. It is apparent from the proceedings below that Dewbre was found to be the trainer of Pearl's Son on June 17. There was evidence introduced which indicated that McCoy worked for Dewbre and was paid by Dewbre. When McCoy was entrusted with the care of a horse, it was through Dewbre Stables and as an employee of Chet Dewbre. The owners turned their horses over to Dewbre for training, not to McCoy. Dewbre in turn would assign a horse to McCoy. When Dewbre would go out of town, he would give instructions to his subordinates for the operation and maintenance of the stables.

Dewbre, as the owner of Dewbre Stables, had full authority and responsibility for the stables. He would then delegate authority and responsibilities to his employees and subordinates. We feel that there is ample and dependable evidence in the record which would enable the trial court to correctly hold that the commission's decision was supported by reliable, probative and substantial evidence and was in accordance with law. Accordingly, the first assignment of error is overruled.

Dewbre's second assignment of error reads as follows:

"The application of Rule RC-13-12 [*sic*] against appellant is unconstitutional where there is no evidence that appellant was the trainer who entered Pearl's Son to race on June 17, 1982; where such application does not protect the public health, safety and morals; and where the actual administrator of the unpermitted drug or chemical and the justification therefor are known."

Dewbre first argues that the application of Ohio Adm. Code 3769-13-02 against him was unconstitutional since he was not the party who "entered" Pearl's Son in the June 17 race and since the application of the rule against him did not directly protect the public's health, safety and morals. In addition, Dewbre contends that application of the absolute insurer rule was unconstitutional since the commission was aware of both who administered the drug to the horse and the reason why the drug was administered.

Dewbre's first position is based on the Supreme Court's holding in *O'Daniel* v. *Ohio State Racing Comm.* (1974), 37 Ohio St. 2d 87 [66 O.O.2d 194]. There the court stated that "[t]he Ohio insurer rule essentially imposes liability, without fault, upon a *trainer of record who enters* into a race a horse which has been administered any chemical or drug." (Emphasis added.) *O'Daniel, supra,* at 90. Our opinion is that Dewbre's reliance on this literal interpretation of the *O'Daniel* decision is misplaced. The rule states that "[t]he trainer shall be the absolute insurer of, and responsible for, *the condition of the horses entered in a race,* regardless of the acts of third parties. * * *" (Emphasis added.) Ohio Adm. Code 3769-13-02(A). To adopt the interpretation propounded by Dewbre would result in the establishment of a position which would enable trainers to circumvent responsibility under the absolute insurer rule by having someone else enter the horses in the races. Every trainer could

then arguably escape liability by claiming that he or she did not "enter" a particular horse in its respective race. We view the ruling of *O'Daniel, supra,* as being applicable to those trainers who enter their horses themselves or who also delegate that particular duty to a subordinate or associate.

Horse racing is a field of activity that is subject to the exercise of extraordinarily broad regulatory powers for the determination and application of state policy judgments. *O'Daniel, supra,* at 92. The Ohio State Racing Commission is granted the authority to license and control horse racing "* * * as is *in the public interest* for the purpose of maintaining a proper control over horseracing meetings. * * *" (Emphasis added.) R.C. 3769.03. Ohio Adm. Code 3769-13-02 is within the scope of the statutory authority of R.C 3769.03 granted to the commission. *O'Daniel, supra.* Application of the rule to horse racing in Ohio is not arbitrary or unreasonable. *Fogt* v. *Ohio State Racing Comm.* (1965), 3 Ohio App. 2d 423, 425-426 [32 O.O.2d 546].

Application of the absolute insurer rule was proper in the case at bar since the use of an illegal narcotic on Pearl's Son was discovered. The public is entitled to the protection entrusted to the commission. Responsibility for the use of illegal drugs is placed on the horse's trainer, despite the actions of third persons. Since Dewbre was found to be the trainer of the horse in question, the application of the absolute insurer rule is warranted, notwithstanding the fact that it is known why the drug was administered and that the application of the prohibited drug is directly attributed to individuals other than the trainer. For these reasons, the second assignment of error is overruled.

The final assignment of error offered by Dewbre claims that:

"The trial court violated appellant's rights to due process in not remanding, overruling or modifying the commission's order suspending appellant for one year when the court found as fact that the referee and commission held appellee to the wrong standard of proof in its case against appellant."

In reviewing the hearing examiner's report, which was adopted by the commission, the court of common pleas held that the examiner had applied the wrong standard of proof in drawing his legal conclusion. However, the court went on to hold that such application was not fatal to the commission's opinion and concurred with the examiner's findings of fact and conclusions of law.

R.C. 119.12 provides in part that:

"The court may affirm the *order* of the agency complained of in the appeal if it finds * * * that the *order* is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

In the absence of such a finding, R.C. 119.12 further provides that the court of common pleas may "* * * make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

The court found that the examiner's findings of fact and conclusions of law were supported by reliable, probative and substantial evidence and affirmed the decision, albeit the application of the wrong standard of proof. It was the court's responsibility to review the commission's decision, decide if it was supported by the evidence, and if it was not, to render such judgment as was in accordance with law and supported by the evidence. The court of common pleas' decision did not deny Dewbre due process of law and did not constitute reversible error. Any error committed was harmless, since the decision and judgment were supported by reliable, probative and ·substantial evidence, notwithstanding the application of the wrong standard of proof. Accordingly,

the third assignment of error is overruled.

*Judgment affirmed.*

HENDRICKSON, P.J. concurs.

RINGLAND, J., dissents.

RINGLAND, J., of the Court of Common Pleas of Clermont County, sitting by assignment.

RINGLAND, J., dissenting. I must respectfully dissent. There is some indication that Dewbre had not been listed as trainer in previous races which would in fact buttress the position that the program which listed him as trainer for the race in issue was a mistake. However, even if this were the case in the race at issue, Dewbre was still the "trainer of record," albeit mistakenly so. A strict reading of *O'Daniel* v. *Ohio State Racing Comm.* (1974), 37 Ohio St. 2d 87 [66 O.O.2d 194], would still impose strict liability. Would the strict liability doctrine apply to a hypothetical where a third-party competitor had intentionally and surreptitiously injected Dewbre's horse with a chemical or drug, and, after the race was run, come forth, confess his actions, resulting in liability for the trainer of record? The Supreme Court in *O'Daniel* would have us find strict liability on that occasion, which produces, in my opinion, just as unjust a result as had occurred in the case at hand.

I have no difficulty in following the *O'Daniel* decision, requiring no showing of *mens rea*, but there was no showing of *any* knowledge on behalf of Dewbre of the injection of the drug; in fact, this injection occurred when Dewbre was out of town and as a result of an unexpected medical emergency. Certainly there is no indication that Dewbre had planned or caused the horse's choking which required medical attention and injections prescribed by the veterinarian.

The rational basis test, as a standard of review for statutory enactments challenged on equal protection grounds, "* * * requires that classifications created by a state 'must be reasonable, not arbitrary, and must rest upon some ground of difference, having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' * * *" (Citations omitted.) *Allrid* v. *Emory University* (1982), 249 Ga. 35, 38, 285 S.E. 2d 521. The rationale of this standard of equal protection analysis is whether the challenged classification bears a reasonable relation to some legitimate legislative objective. *Alevy* v. *Downstate Medical Center* (1976), 39 N.Y. 2d 326, 332; 384 N.Y. Supp. 2d 82. Certainly I agree that the state has a legitimate interest to protect by creating a strict liability statute and that trainers should not be enabled to circumvent responsibility by having someone else enter the horse in the race. However, in the facts at hand, not only did someone else enter the horse in the race but the "trainer" (Dewbre) at no time had *any* knowledge or connection with the events which occurred in the case at hand.

Therefore, I believe it is time for *O'Daniel* to be reviewed and limited based on the facts at hand as well as considered in light of the "rational basis test." Certainly the *O'Daniel* holding has its limitations.