OHIO STATE RACING COMMISSION, Appellant and Cross–Appellee,

v.

KASH, Appellee and Cross–Appellant.

[Cite as *Ohio State Racing Comm. v. Kash* (1988), 61 Ohio App.3d 256.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 52647, 52658.

Decided Dec. 27, 1988.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *John C. Albert,* Assistant Attorney General, for appellant and cross-appellee.

*Turoff & Turoff* and *Jack N. Turoff,* for appellee and cross-appellant.

ANN B. MASCHARI, Judge.

This case consists of an appeal and cross-appeal from a judgment and opinion of the Cuyahoga County Court of Common Pleas, rendered August 22, 1986. The parties to this appeal are the Ohio State Racing Commission, appellant and cross-appellee (hereinafter referred to as "appellant" or "the commission"), and Victoria Kash, appellee and cross-appellant (hereinafter referred to as "appellee"). Originally, both appellant and appellee filed a notice of appeal. This court consolidated the appeals on October 27, 1986.

Appellee is a licensed harness owner-driver-trainer in Ohio. On January 14, 1985, one of the horses that appellee trained, named "Chip Butler," finished second in the sixth race at Northfield Park. Thereafter, the horse was taken to the state retention barn to obtain a urine sample in order to test for illegal substances or improper drug overages, in accordance with a rule of the Ohio Racing Commission, Ohio Adm.Code 3769–18–01.

The urine sample was sent to the Ohio State Racing Commission Testing Laboratory and tests revealed that furosemide (lasix) was present in Chip Butler's sample. After a hearing was held on January 25, 1985, the Board of

Stewards of Northfield Park found appellee in violation of Ohio Adm.Code 3769–18–01 and 3769–18–02. It suspended appellee's license for sixty days and fined her $250. On January 26, 1985, appellee appealed that ruling to the Ohio State Racing Commission.

The commission scheduled a hearing for February 6, 1985, and then rescheduled it to February 19, 1985. On February 15, 1985, appellee requested a continuance for the reason that her counsel had other court commitments. The continuance was granted and the hearing was rescheduled to February 26, 1985.

On February 26, 1985, appellee and her attorney failed to appear. Instead, on the morning of the scheduled hearing, the hearing officer was presented a letter from appellee's counsel requesting a continuance, stating that counsel was involved in another court proceeding. Also contained in the same envelope was a motion to dismiss, filed by appellee, for failure to timely schedule the hearing. Counsel for the commission, who attended the February 26, 1985 scheduled hearing, had not received a copy of either of the aforementioned documents before the hearing. The hearing officer overruled appellee's motion to dismiss and, upon finding proper service to appellee and an inadequate request for a continuance, dismissed her appeal for failure to appear.

Appellee filed objections to the hearing officer's report and recommendation on March 11, 1985, and counsel for the commission responded on March 21, 1985. At its meeting of March 27, 1985, the commission decided to grant appellee another hearing on the merits of her appeal. A hearing was held on April 18, 1985.

On May 24, 1985, the commission issued its adjudication order, upholding the Board of Stewards' decision finding appellee in violation of Ohio Adm. Code 3769–18–01 and 3769–18–02, suspending her license for sixty days, and fining her $250.

On or about June 5, 1985, appellee appealed to the Cuyahoga County Court of Common Pleas. The record was certified to the lower court and the issues were briefed by both parties. On August 22, 1986, the lower court found that appellee had violated Ohio Adm.Code 3769–18–02, but not Ohio Adm.Code 3769–18–01. The lower court also ordered that the penalty be reduced to a suspension of five days and a fine of $50.

Appellant and appellee have each raised two assignments of error. This court will first consider appellee's assignments of error.

"I. The trial court erred by failing to order a dismissal of the proceedings against cross-appellant for the commission's violation of Ohio Revised Code Section 119.07."

Appellee appealed the decision of the Board of Stewards of Northfield Park to the Ohio State Racing Commission on January 26, 1985. On January 29, 1985, the commission sent appellee a letter which stated that the hearing on her appeal was set for February 6, 1985. Also, within the same letter, the commission stated:

"However, upon its own motion in order to more efficiently conduct its business, the Commission hereby postpones your hearing pursuant to Section 119.09, Ohio Revised Code, to a later date. You will be notified accordingly."

On February 4, 1985, the commission sent appellee a letter scheduling the hearing for February 19, 1985. On February 15, 1985, the hearing was rescheduled to February 26, 1985, at the request of counsel for appellee for the reason that counsel was "engaged in another court matter."

On the morning of February 26, 1985, the scheduled hearing date, the hearing officer was presented a letter from appellee's counsel requesting a continuance of the February 26th hearing; the letter was also accompanied by appellee's motion to dismiss. On February 26, 1985, the hearing officer dismissed the appeal for failure to appear. Appellee filed objections to the hearing officer's report and recommendation and the commission granted another hearing request. The hearing was conducted by the commission on April 18, 1985.

R.C. 119.07 governs the notice and scheduling of administrative hearings. That section states, in pertinent part:

"Whenever a party requests a hearing in accordance with this section and section 119.06 of the Revised Code, the agency shall immediately set the date, time, and place for such hearing and forthwith notify the party thereof. The date set for such hearing shall be within fifteen days, but not earlier than seven days, after the party has requested a hearing, unless otherwise agreed to by both the agency and the party."

A portion of R.C. 119.09 applies to the continuance of administrative hearings. It reads that "(a)n agency may postpone or continue any adjudication hearing upon the application of any party or upon its own motion."

Appellee contends that R.C. 119.09 must be read in conjunction with R.C. 119.07 and that the date for hearing *shall* be within fifteen days of the request. Appellee argues that because of the legislature's use of the word "shall" in R.C. 119.07, the commission's failure to hold a hearing within fifteen days entitled appellee to a dismissal of the proceedings against her.

The Court of Appeals for Franklin County in *In re Barnes* (1986), 31 Ohio App.3d 201, 31 OBR 470, 510 N.E.2d 392, ruled that R.C. 119.09 makes R.C. 119.07 directory, not mandatory. The court stated:

"This authority to continue a hearing on the board's own motion must be read *in pari materia* with the fifteen-day deadline in R.C. 119.07, because R.C. 119.06 through 119.10 combine to set forth in detail the administrative procedures for the suspension or revocation of state licenses. *State, ex rel. Kendrick, v. Masheter* (1964), 176 Ohio St. 232, 235, 27 O.O.2d 128, 129–130, 199 N.E.2d 13, 15. In our judgment, R.C. 119.09 gives the fifteen-day provision of R.C. 119.07 the character of being directory, not mandatory. We hold that the continuance of the instant hearing to June 15, 1984, albeit perfunctory, was within the authority and discretion of the board, *State, ex rel. Columbus Gas & Fuel Co., v. Pub. Util. Comm.* (1930), 122 Ohio St. 473, 172 N.E. 284, and that the board's jurisdiction over the charges against Dr. Barnes was not terminated by failure to hold the hearing within the fifteen-day period referred to in R.C. 119.07." *In re Barnes, supra,* 31 Ohio App.3d at 207–208, 31 OBR at 477, 510 N.E.2d at 399.

Further, in *Pickett v. Ohio Bur. of Motor Vehicles* (1981), No. CV 81 8 2297, unreported, the Court of Common Pleas of Summit County found that "the requirements as to the scheduling of a hearing pursuant to O.R.C. Sec. 119.07 are discretionary and not mandatory. Support for this interpretation is found in the cases of *State, ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, [142 N.E. 611] and *Weyandt v. State Personnel Board of Review* (Summit Co. Ct. App. No. 8162, Decided December 30, 1976), unreported. *Pickett v. State of Ohio, Bureau of Motor Vehicles, supra,* at 2."

An additional reason that appellee cites for dismissal of the proceedings against her is that appellant caused undue and unexplained delay in scheduling the hearing. In *Kleener v. Ohio State Racing Comm.* (1983), No. 83–C–177, 41–13036, unreported, the Court of Common Pleas of Holmes County found no proof or evidence that the appellant was materially prejudiced or damaged in any way by the actions of the agency in the delay of the hearing date and, thus, upheld an agency's authority to postpone or continue an adjudication hearing on its own motion under R.C. 119.09.

In reviewing the facts of the case at bar, this court finds that the commission initially set the hearing for February 6, 1985, which was "within fifteen days, but not earlier than seven days" of the January 26, 1985 request for hearing filed by appellee. Appellant then rescheduled the hearing pursuant to R.C. 119.09 on "its own motion" citing the reason for the continuance, *i.e.,* "in order to more efficiently conduct its business."

██ This court is of the opinion that the appellant's actions were proper and adopts the rulings of other jurisdictions that R.C. 119.07 is not mandatory when read in conjunction with R.C. 119.09. Administrative agencies, just like parties and attorneys, must be entitled to continuances, as long as such continuances do not extend beyond a reasonable period of time. In the case at bar, the commission rescheduled the hearing to occur in less than two weeks after the expiration of the initial fifteen-day period.

Furthermore, appellee presents no evidence indicating that she has been prejudiced by the fact that the hearing was not held within fifteen days of her request. In fact, after the February 19, 1985 hearing date was scheduled, appellee's counsel requested two continuances (one of which was presented on the morning of the scheduled hearing date), for the reason that he was involved in other court proceedings.

This court finds that the commission complied with the statutory requirements and case law with respect to the scheduling of administrative hearings and, thus, appellee's first assignment of error is not well-taken.

"II. The trial court erred by failing to order a dismissal of the proceedings against cross-appellant for the commission's reliance upon evidence which is hearsay or, alternatively, is not reliable, and for the commission's arbitrary admission of such evidence while excluding certain evidence favorable to cross-appellant."

Appellee asserts in her brief that the evidence of the test results testified to by Dr. Richard Sams, Director of the Ohio State Racing Commission Laboratory, is "hearsay evidence and does not fit an exception because the circumstances of preparation indicate a lack of trustworthiness of the results."

██ As a general rule, administrative agencies are not bound by the strict rules of evidence applied in court. See *Provident Sav. Bank & Trust Co. v. Tax Commission* (C.P.1931), 10 O.O. 469; *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 7 OBR 1, 453 N.E.2d 1262; 2 Ohio Jurisprudence 3d (1977), Administrative Law, Section 93.

██ Despite the fact that the rules of evidence need not be strictly complied with in the case at bar, this court will review the evidence of the test results to determine if such evidence falls within the hearsay exception of Evid.R. 803(6). This rule in effect states that reports, records, or data compilations are admissible via the custodian of such records "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

■ Dr. Sams indicated in his testimony that numerous tests were performed by the Ohio State Racing Commission Testing Laboratory to determine if there were any foreign substances in the urine specimen taken from Chip Butler after the race on January 14, 1985. The test results indicated the presence of furosemide in the urine specimen.

At the hearing, Dr. Sams identified all of the records of the test results and testified that such records are under his jurisdiction and control and kept in the ordinary course of business. Dr. Sams also testified that all of the tests conducted were performed under his jurisdiction and control.

There is no evidence that would indicate that the preparation of the records of the test results lacked trustworthiness. Dr. Sams did testify, upon cross-examination, that the actual testing was done by a Miss Bland, Mr. Roberts and Mr. Noonan; however, the evidence shows that Dr. Sams periodically checked on the work of these assistants and examined their results and data, prior to making a report to the commission.

Appellee's contention that the records of the test results lacked trustworthiness and, thus, were improperly admitted, is without merit.

■ Next, appellee argues in her brief that the test results are "too unreliable to support a finding of a violation of the rules of racing." Appellee contends that the racing laboratory's procedure of washing and drying the glass test tubes, but not sterilizing them before reuse, may have resulted in the contamination of the urine sample of Chip Butler after the sample was transferred from the plastic jar in which it arrived to glass test tubes.

Appellee's argument that the test results were unreliable is based on speculation. Appellee offered no evidence indicating that the probability existed that the procedure of washing and drying the test tubes could result in contamination. As close as appellee came to raising the issue was in the cross-examination of Dr. Sams, wherein Sams testified that the plastic jars in which the urine is first captured in at the race track and then carried in to the laboratory could possibly cause contamination if reused. Yet, Dr. Sams testified that these plastic jars are not washed and dried and reused like the glass test tubes, but instead are discarded once the urine specimen arrives at the laboratory and the specimen is transferred into various test tubes.

Also, even if the test tubes could be contaminated, appellee offered no evidence indicating a probability that the several test tubes used in the sampling of Chip Butler's specimen contained a prior sample which contained, *particularly*, furosemide.

This court finds that appellee did not produce any evidence to support her argument that the test results were unreliable.

█ Finally, appellee argues that the commission erred by excluding the testimony of one of her witnesses, Dr. Albert Gabel, as to statements he had allegedly made in a meeting with appellee and a Ray Fisher concerning the length of time furosemide would remain in a horse after injection. Upon direct examination, Dr. Gabel stated that he didn't remember that event. Therefore, the commission acted properly in excluding such testimony because of an inadequate foundation.

Furthermore, the transcript reflects that appellee had every opportunity in the direct examination of Dr. Gabel to dispute the previous testimony of Dr. Sams who testified that furosemide could be detected in the urine of a horse up to only twelve hours after injected. The commission never precluded Dr. Gabel from disputing Dr. Sams' opinion. Dr. Gabel never gave an opinion under oath as to how long furosemide could be detected in the urine of a horse. Rather, Dr. Gabel admitted under oath that he had no experience in testing for foreign substances in horses.

Thus, this court finds that appellant did not act arbitrarily with respect to its ruling on the admissibility of the testimony of Dr. Gabel.

Appellee's second assignment of error is not well-taken.

This court will next consider appellant's two assignments of error.

"I. The lower court has erred in its interpretation of O.A.C. 3769–18–01 and in its decision that the commission's finding of a violation is not supported by reliable, substantial and probative evidence and is not in accordance with law."

Appellant found appellee to be in violation of Ohio Adm.Code 3769–18–01 and 3769–18–02 (commonly known as the "absolute insurer rule"), thereby affirming the ruling of the Northfield Park Board of Stewards.

In the appeal of the commission's decision, one of the lower court's determinations was that the commission's finding that appellee violated Ohio Adm.Code 3769–18–01 was not supported by reliable, substantial and probative evidence, nor was it in accordance with law.

Ohio Adm.Code 3769–18–02 provides in part:

"(A) The trainer shall be the absolute insurer of, and responsible for, the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769–18–01 of the Administrative Code, the trainer of the horse, may, in the discretion of the commission, be subjected to penalties provided in paragraph (B) of this rule. In addition, the owner of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the

care or attendance of the horse may, in the discretion of the commission be subjected to penalties provided in paragraph (B) of this rule. * * * "

 The Cuyahoga County Court of Common Pleas was correct in its interpretation of Ohio Adm.Code 3769–18–02 when it stated, in page 8 of its opinion, that this rule "imposes liability on 'the trainer' regardless of who violated the rule." *Kash v. Ohio State Racing Comm.* (Aug. 22, 1986), No. 92514, unreported. The strict accountability which the rule imposes upon a trainer was upheld by the Ohio Supreme Court in *O'Daniel v. Ohio State Racing Comm.* (1974), 37 Ohio St.2d 87, 66 O.O.2d 194, 307 N.E.2d 529.

 Turning to Ohio Adm.Code 3769–18–01, that rule provides in part:

"(A) Definitions. The terms and words used in the following rules are defined as:

" * * *

"(2) 'Foreign substances' shall mean all substances, except those which exist naturally in the untreated horse at normal physiological concentration, and shall include all narcotics, stimulants, depressants or other drugs or medication of any type.

" * * *

"(B) It shall be the intent of these rules to protect the integrity of horse racing, to guard the health of the horse, and to safeguard the interests of the public and the racing participants through the prohibition or control of all drugs and medications or substances foreign to the natural horse. In this context:

"(1) Except for phenylbutazone, no horse participating in a race shall carry in its body any foreign substance.

" * * *

"(7) A finding by the chemist that a foreign substance, other than the amount of phenylbutazone as permitted in paragraph (B)(1) of this rule, is present in the test sample shall be considered a positive test and a violation of this rule. It shall furthermore be prima facie evidence that such foreign substance was administered and carried in the body of the horse while participating in a race. Such a finding shall also be taken as prima facie evidence that the trainer and his agents responsible for the care and custody of the horse have been negligent in the handling or care of the horse."

In its discussion of Ohio Adm.Code 3769–18–01, the lower court stated on page 8 of its opinion that "[w]hile it is conceivable that appellant, a trainer, could be found liable under both sections [Ohio Adm.Code 3769–18–01 and 3769–18–02], such a finding would require proof of her involvement." *Kash v.*

*Ohio State Racing Comm., supra.* This implies that the lower court was operating under the assumption that the burden of proof would rest with the commission (once a prohibited foreign substance is detected in a horse), to prove negligence in order to establish a violation of Ohio Adm.Code 3769–18–01.

The last sentence of division (B)(7) of Ohio Adm.Code 3769–18–01 makes it clear that if a prohibited foreign substance is found by the chemist, regardless of whether or not it is proven that the trainer is responsible, there will exist "prima facie evidence" that the trainer has been negligent.

The term "prima facie evidence" means evidence that is sufficient to shift the burden of producing evidence. See 9 Wigmore, Evidence in Trials at Common Law (Chadbourn Rev.1981), Section 2494. Apparently, appellee understands and accepts the meaning of this term when she states in her brief that " 'prima facie evidence' means that such evidence may be refuted by evidence that appellee was not negligent."

Applying the "prima facie evidence" standard, a review of the record is in order to determine if appellee produced evidence to overcome a presumption of negligence. Appellee argues that her testimony indicates that she had her veterinarian inject Chip Butler with furosemide three days before the race because of cramping. Under the rules, this is allowable. Appellee further argues that she testified that she believed the furosemide would clear the horse's system before the race and, thus, this reasonable belief is sufficient to refute the "prima facie evidence" against her.

This is a logical conclusion if the furosemide which was detected in the urine sample of Chip Butler was the same furosemide that had been injected into the horse by appellee's veterinarian. However, Dr. Richard Sams, appellant's expert, testified that his laboratory has never been able to detect furosemide in a urine sample longer than twelve hours after it has been introduced into a horse's system. Appellee produced no expert testimony to refute Dr. Sams' opinion. Therefore, as the lower court stated in its opinion, " * * * this suggests that someone else introduced furosemide into the body of the horse subsequent thereto. * * * " *Kash v. Ohio State Racing Comm., supra,* at 9. Yet, the lower court was incorrect in the burden or standard of proof it applied in arriving at its conclusion that " * * * the identity of that someone else has not been established by the quantum of evidence necessary to impose liability for a violation of O.A.C. 3769–18–01." *Kash v. Ohio State Racing Comm., supra,* at 9.

■ Applying the "prima facie evidence" standard of Ohio Adm.Code 3769–18–01(B)(7), it was not appellant's burden to show who injected the furosemide into Chip Butler that was found in the horse's system after the

race, but, rather, it was appellee's burden to show that she was not negligent in guarding the horse to ensure that it was not illegally medicated when it raced.

By her own testimony, appellee admitted that Chip Butler was not watched closely prior to a race. Appellee testified that she would leave the track about 11:00 or 12:00 midnight and sometimes did not return until 1:00 or 2:00 p.m. the next day. She testified that while she was gone, there were no night watchmen, the barn was not locked and, in fact, there were other people, who stabled their horses in the same barn as Chip Butler, who could freely come and go. Further, appellee testified that she was not always present in the stall when a urine specimen would be taken from Chip Butler after a race.

This court is of the opinion that appellee has not rebutted the "prima facie" finding of negligence as required by Ohio Adm.Code 3769–18–01 and, thus, appellant's first assignment of error is well-taken.

"II. The lower court properly decided that the appellee's violation of O.A.C. 3769–18–02 was supported by reliable, substantial and probative evidence and was in accordance with law but erred in ordering a modification of the penalty imposed by the commission."

Appellee contends that the penalty imposed by the commission of sixty days' suspension and a $250 fine was for a violation of both Ohio Adm.Code 3769–18–01 and 3769–18–02, with the penalty provision of Ohio Adm.Code 3769–18–01 being invoked. However, the trial court reversed the commission's finding of a violation of Ohio Adm.Code 3769–18–01. Appellee contends in her brief that "[w]here one of two rules violations is reversed, and the penalty provision which had been involved is not applicable to the remaining violation, the trial court is within its authority under O.R.C. Section 119.12 to 'modify the order.'"[1]

Since this court is affirming the commission's finding of a violation of Ohio Adm.Code 3769–18–01 and 3769–18–02, and the sixty-day suspension and $250 fine is the penalty for a violation of both rules, it is not necessary to pass upon appellant's second assignment of error.

---

1. R.C. 119.12 states, in pertinent part:
 "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

This court hereby affirms the entire adjudication order of the Ohio State Racing Commission, finding that such order was supported by reliable, substantial and probative evidence and was in accordance with law.

The judgment of the trial court is reversed.

*Judgment reversed.*

NAHRA, C.J., and MARTIN, J., concur.

ANN B. MASCHARI, J., of the Erie County Court of Common Pleas, and JOHN D. MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment.