DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
David L. Winner appeals the judgment of the Wayne County Court of Common Pleas which affirmed the Ohio State Racing Commission's ("Commission") order suspending Winner's horse training license. We affirm.
Winner is a trainer of thoroughbred horses and is licensed by the Commission. Winner's license was issued by the Commission on February 26, 1996.
The events leading up to the Commission's suspension of Winner's license are as follows: On October 27, 1994, R.C. Cline Thoroughbred Training Stable ("the Stable") filed a complaint against Winner in the Franklin County Municipal Court. The Stable alleged that Winner had failed to pay for services performed by the Stable, in breach of an oral agreement between Winner and the Stable, and prayed for judgment in the amount of $5,714.35.
The parties reached an agreement in the matter and on June 1, 1995, the Franklin County Municipal Court entered judgment against Winner based on this agreement. The judgment entry provided in part:
 It is ORDERED, ADJUDGED, and DECREED that [the Stable] be granted a judgment against [Winner] in the sum of $5,714.35, plus interest at the statutory rate and costs.
 It is further ORDERED, ADJUDGED, and DECREED that [the Stable] will take no action to enforce the judgment until November 1, 1995. If the judgment remains unpaid at that time, [the Stable] will be permitted to take any and all actions necessary to enforce the judgment.
 It is further ORDERED, ADJUDGED, and DECREED that [the Stable] will not certify the judgment to the Ohio State Racing Commission or take any acts to suspend or otherwise invalidate [Winner's] trainer's license before November 1, 1995. If the judgment remains unpaid on or after November 1, 1995, [the Stable] may take any steps necessary to suspend or invalidate [Winner's] trainer's license as a result of this judgment.
Winner failed to pay the judgment. The Stable served a certified copy of the Franklin County judgment against Winner on the Commission, and certified that it was a horse racing related debt. On April 12, 1996, the Commission notified Winner that it had been served with the certified copy of the judgment. Winner requested a hearing. On July 24, 1996, a hearing was held at Northfield Park. The Commission found Winner to be in violation of Ohio Adm. Code 3769-2-26(A)(6) and (10) and suspended his license "until such time as he satisfies the judgment against him."
Winner appealed the decision of the Commission to the Wayne County Court of Common Pleas. The Wayne County Court of Common Pleas affirmed the decision of the Commission. Winner appeals, assigning three errors.
Winner's first assignment of error states:
 I. WHETHER OR NOT REVISED CODE SECTION 3769.03
ENABLES THE OHIO STATE RACING COMMISSION AUTHORITY TO ENACT OHIO STATE RACING RULE 3769-2-26(A)(6) WHICH REGULATES THE PERSONAL FINANCIAL AFFAIRS OF A LICENSEE WHERE SUCH AFFAIRS ARE "RACE-HORSE RELATED" BUT NOT DIRECTLY INVOLVED IN HORSE RACING.
R.C. 119.12 governs the court of common pleas' review of state agency orders, providing in part:
 Any party adversely affected by any order of an agency issued pursuant to an adjudication * * * suspending a license, may appeal from the order of the agency to the court of common pleas[.] * * *
* * *
The court shall conduct a hearing on such appeal[.]
* * *
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with the law.
On appeal, our role is limited to determining whether the trial court abused its discretion in affirming the agency's decision.Clemmer v. Ohio State Racing Comm. (1995), 107 Ohio App.3d 594,596.
R.C. 3769.03 governs the rules and conditions by which horse racing is conducted in Ohio and provides in part:
 The state racing commission shall prescribe the rules and conditions under which horse racing may be conducted[.] * * *
* * *
 The state racing commission may issue, deny, suspend, or revoke licenses to such persons engaged in racing and to such employees of permit holders as is in the public interest for maintaining a proper control over horse-racing meetings.
Ohio Adm. Code 3769-2-26 sets forth the grounds for refusing, revoking, or suspending a license issued by the Commission and provides in part:
 (A) The commission may refuse to grant, may revoke or may suspend any license, or may otherwise penalize under the provisions of rule 3769-2-99 of the Administrative Code, a person to whom any of the following apply:
* * *
 (6) The applicant or licensee has demonstrated financial irresponsibility by accumulating unpaid obligations [or] defaulting in obligations[;]
* * *
 (10) The applicant or licensee has engaged in conduct which is against the best interest of horse racing[.]
"Horse racing * * * [is a] subject with respect to which police regulations for the protection of the public safety, morals, and general welfare, are not only proper but are an absolute necessity." Standard "Tote", Inc. v. Ohio State Racing Comm.
(1954), 58 Ohio Ops. 337, 341. It is a field in which "potential evils abound," necessitating the conferral of broad regulatory powers to the Commission. Id. at 341-342. See, also, O'Daniel v.Racing Comm. (1974), 37 Ohio St.2d 87, 93.
 The very essence of rule-making power is found in the authority to impose by rules, restrictions or burdens in addition to those imposed by state, provided the rules do not subvert the statutes imposing such power.
Standard "Tote", Inc., supra, at 342 . In analyzing Winner's assignment of error we must ask whether the rule in question is beyond the scope of the Commission's rule-making power. See id.
The power of the Commission is not limited to regulation of the actual running of the horses. Id. at 343. For example, the Commission has the power to regulate "parimutuel wagering[1]" as well as "the conditions under which horse racing shall be conducted." Id. at 344. We must not usurp or hamper the duly authorized regulatory and control power of the Commission. Seeid. at 342.
The challenged regulation must have a reasonable relationship to the power to regulate horse racing. State Racing Comm. v.Robertson (1960), 111 Ohio App. 435, 440. The terms of the regulation "should be so construed as to relate directly to the conduct of horse racing." Id. In Robertson, a licensed jockey removed a rear-view mirror and a potato masher from an automobile while in an inebriated condition. Id. at 438. The jockey was convicted of petit larceny. Id. The court of appeals held that a rule prohibiting "fraudulent" and "corrupt" practices by licensed jockeys does not allow the revocation of a jockey's license where conviction upon which the rule violation was based does not directly relate to the conduct of horse racing. Id. at 439-440. On the other hand, a rule prohibiting "personal use of any drug of abuse" without a legal prescription and allowing the Commission to require urinalysis of a licensee where it has "reasonable suspicion" of drug use by the licensee has been held to be reasonable due to the heavily regulated nature of the horse racing industry and the diminished expectation of privacy of the licensees. Carrelli v. Ginsburg (C.A. 6, 1992), 956 F.2d 598,604-605.
Winner argues that the judgment against him is not directly related to horse racing and therefore the Commission acted beyond its regulatory power in suspending Winner's license. We disagree for two reasons. First, Ohio Adm. Code 3769-2-26(A)(6) does not limit unpaid obligations to race-related obligations. By contrast, however, many other sections of the Administrative Rules for Thoroughbred and Quarter Horse racing clearly specify that the prohibited conduct must be horse race-related. For example, Ohio Adm. Code 3769-2-26(A)(5) prohibits fraud or misrepresentation inconnection with the racing or breeding of horses and subsection (A)(9) of that same rule prohibits abandonment, mistreatment, abuse, neglect, and cruelty to horses. There are subsections, however, that are not specifically limited to horse related activities, including several subsections of the rule at issue. For example, subsection (A)(1) provides for suspension of a license if the licensee has been convicted of a felony in the last ten years. This subsection does not specify that the felony must be horse related. We must presume that the Commission, in enacting the Administrative Rules, contemplated a broader application of some subsections where it did not specifically limit the application to horses or horse racing. While it is true that Ohio Adm. Code 3769-2-32 specifically states that the debt must be race horse related for that particular rule to apply, no such limitation is stated in Ohio Adm. Code 3769-2-26(A)(6).
Racehorse trainers with unpaid debts may be susceptible to opportunities for chicanery such as "fixing" races, whether or not these debts are horse race related. As the trial court noted in its judgment entry, "[i]mplicit in [the Commission's] authority is the power to oversee the financial responsibility of its licensees."
Second, even if it were to be assumed that the Commission intended to limit the application of Ohio Adm. Code3769-2-26(A)(6) to horse race related obligations, the record shows that the judgment against Winner arose from an unpaid debt Winner owed to a thoroughbred stable. The Commission's authority to regulate the horse racing industry extends to those activities incidental to the racing of horses, such as the training and boarding of horses. Therefore, a thoroughbred racehorse trainer's debt to a thoroughbred stable is subject to the regulatory powers of the Commission.
Winner's first assignment of error is overruled.
 II.
Winner's second assignment of error states:
 WHETHER OR NOT OHIO STATE RACING RULE 3769-2-26(A)(6) REQUIRES MORE THAN ONE DEBT TO BE A VIOLATION OF SUCH RULE.
Ohio Adm. Code 3769-2-26 (A)(6) provides for the revocation or suspension of a license by the Commission if "[t]he applicant or licensee has demonstrated financial irresponsibility by accumulating unpaid obligations [or] defaulting in obligations." This rule twice uses the plural. However, Ohio Adm. Code3769-2-32 provides:
 Any individual, company or other entity who requests the commission to take action against a licensee under the financial responsibility rule shall submit the request in writing indicating the debt was horse race related. The request must be accompanied by a certified copy of the court judgment against the licensee and a non-returnable fee of one-hundred dollars by certified check or money order made payable to the "Ohio State Racing Commission."
It appears that a single debt that has been reduced to a court judgment can be submitted to the Commission. The question is: can a single judgment trigger the Commission's power to suspend a licensee's license? Ohio Adm. Code 3769-2-26(A)(6) clearly states that the Commission may suspend a license when the licensee has demonstrated financial irresponsibility by accumulating unpaidobligations. Webster's New Collegiate Dictionary defines "accumulate" as "to heap or pile up" or "to collect or gather" or "to increase in quantity or number." Webster's New Collegiate Dictionary (1980) 8. One debt does not an accumulation make.
However, one judgment may be for a series of unpaid debts, which would constitute an accumulation of debts or obligations. The transcript of proceedings before the Commission indicates that Winner owed the Stable for "thoroughbred training and stabling and veterinary services," which appear to be multiple debts or obligations incurred for multiple services rendered by the Stable. Winner did not appear at the hearing and offered no evidence to refute that he owed multiple debts to the stable.
Moreover, the Stable, in accordance with the judgment agreed to by Winner, requested that the Commission take action against Winner for an unpaid judgment, not merely an unverified debt. Winner argues that there may be business reasons for a licensee to not pay a debt or financial obligation. This argument is irrelevant. Winner entered into an agreement with the Stable, which was then entered as a judgment of the Franklin County Municipal Court, whereby Winner agreed to pay the money he owed to the Stable in exchange for the Stable not exercising its right to notify the Commission. While it is true that there may be valid business reasons for not paying a debt, once a trial court enters an order stating that the debtor is liable for the debt and that debt has been reduced to a judgment, the obligation becomes a court order which, unless stayed, must be paid. The judgment creditor can use the power of the court system to collect on that judgment if the debtor fails to pay.
Because the record supports that Winner owed multiple debts to the Stable, and because Winner has no justification for not paying the judgment, Winner's second assignment of error is overruled.
 III.
Winner's third assignment of error states:
 WHETHER OR NOT AN ADMINISTRATIVE AGENCY MAY ENTER A FINDING OF A RULE VIOLATION IN THE ABSENCE OF NOTICE AND A HEARING BEING HELD.
The record firmly supports that Winner received both notice and a hearing in the matter. The Commission notified Winner that a hearing was to be held in the matter on June 21, 1996 at Thistledown Racetrack. Winner asked that the hearing be rescheduled. The Commission granted Winner's request and rescheduled the hearing for July 24, 1996 at Northfield Park. Winner submitted written arguments to the Commission in support of his position before the July 24, 1996 hearing. Winner elected not to appear personally at the hearing.
We agree with Winner's assertion that notice and a hearing are required before a license can be suspended. However, Winner received such notice and hearing. Winner's third assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Wayne Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, P. J.
QUILLIN, J., J.
CONCUR.
[1] Pari-mutuel betting is "[a] form of wagering, generally on the outcome of horse or dog races, whereby all bets made on a particular race are pooled and then paid, less a management fee, to holders of winning tickets. * * * Such betting is allowed in most states, though it is heavily regulated." (Citations omitted.) Black's Law Dictionary (6 Ed. 1990) 1115.