OPINION
{¶ 1} Appellant, Donald Roberson, appeals from the May 20, 2003 judgment of the Franklin County Court of Common Pleas affirming an order of appellee, the Ohio State Racing Commission ("Commission" or "appellee"), sanctioning appellant after one of his horses tested positive for a prohibited substance. For the reasons that follow, we affirm.
 {¶ 2} Appellant has been a licensed trainer of thoroughbred horses since 1971. During his career, appellant has trained thousands of horses that have raced at 60 racetracks in California, Ohio, West Virginia, and other states. Until this case, appellant had never been accused of, or had his license suspended for, any medication violations. Appellant is known in the horse racing industry as a person of the highest character and has a reputation of the highest integrity. The trial court noted that appellant had a spotless record and was a well-respected trainer of thoroughbred horses.
 {¶ 3} On April 18, 2001, appellant's horse, First Choice, finished first in the sixth race at Thistledowns. As is customary, blood and urine samples were taken from the horse after the race and tested for the presence of foreign substances. First Choice tested positive for the banned chemical substance, Albuterol. Albuterol is a bronchodialator drug approved by the United States Food and Drug Commission that is commonly given to horses that develop respiratory problems similar to asthma in humans. First Choice and a number of appellant's other horses had been shipped to Ohio from California and developed breathing problems. Upon the advice of his veterinarians, appellant had an assistant trainer administer Albuterol to his horses by means of an aerosol mask. In order to comply with Commission medication rules, veterinarians recommend that Albuterol treatment be discontinued 48 hours prior to race day in order to allow the substance to clear the horse's body. Appellant complied with this recommendation in treating First Choice. Nevertheless, the horse's urine sample tested positive for the substance, although "at the low end." (Tr. 94.) None of appellant's other horses that raced that day tested positive except First Choice. At the hearing, appellant surmised that his assistant trainer might have left the aerosol mask on too long resulting in a larger dose. (Tr. 124.)
 {¶ 4} Appellant was charged with a violation of the medication rules of the Commission following the positive test for Albuterol. An adjudication hearing was held on March 18, 2002. The hearing officer determined that appellant had violated Ohio Adm. Code 3769-8-01(B) and3769-9-02(A). The Commission upheld the finding of the violations and assessed a penalty of a 60-day license suspension, 15 days of which were to be held in abeyance and remitted upon the condition of no further medication-related violations for a period of one calendar year, forfeiture of the purse, and a fine of $500.
 {¶ 5} Appellant filed a timely notice of appeal to the Franklin County Court of Common Pleas. The court affirmed the order of the Commission, and appellant then timely perfected this appeal, assigning as error the following:
ASSIGNMENT OF ERROR NO. I:
The trial court erred in affirming the Racing Commission's decision to suspend the appellant's license when the evidence established that the original unaltered urine sample taken from the appellant's horse tested negative for the presence of drugs. Thus, the Commission's order was not supported by substantial, reliable, probative evidence.
Assignment of Error No. II:
The trial court erred in affirming the agency's order which imposed a strict liability standard in sanctioning appellant. The order was contrary to law because all the evidence established that the horse only had trace amounts of therapeutic Albuterol, which was not carried in the body of the horse on race day.
 {¶ 6} In a recent case from this court upholding sanctions against a trainer for Lasix violations, this court articulated the appropriate standard of review for an administrative appeal from an order of the Racing Commission as follows:
In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with the law.
Belcher v. Ohio State Racing Comm., Franklin App. No. 02AP-998, 2003-Ohio-2187, citing Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87.
 {¶ 7} Reliable, probative and substantial evidence has been defined as follows:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571.
 {¶ 8} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village SchoolDist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the Commission's order was supported by reliable, probative and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. However, on the question of whether the Commission's order was in accordance with the law, this court's review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339, 343. Belcher, supra.
 {¶ 9} Appellant was charged with violation of the medication rules, Ohio Adm. Code 3769-8-01(B), which provides in pertinent part:
It shall be the intent of this rule to protect the integrity of horse racing, guard the health of the horse, and safeguard the interest of the public and racing participants through the prohibition or control of drugs, medications and substances foreign to the natural horse. In this context:
(1) Except for detection levels of such non-steroidal anti-inflammatory drugs authorized for use by order of the commission * * * no horse entered to race shall carry in its body on race day any prohibited foreign substance.
* * *
(10) A finding by the chemist that a foreign substance * * * is present in the test sample shall be considered a positive test and a violation of this rule. Also, it shall be prima facie evidence that such foreign substance was administered and carried in the body of the horse while participating in a race and that the trainer and his agents responsible for the care and custody of the horse have been negligent in the handling or care of the horse.
 {¶ 10} Under this rule, a prima facie case of negligence based on a positive test result may be rebutted with evidence that appellant was not negligent in the care of his horse. Belcher, at ¶ 14.
 {¶ 11} Appellant was also charged with a violation of Ohio Adm. Code 3769-8-02(A), commonly known as the absolute insurer rule. That rule provides:
The trainer shall be the absolute insurer of, and responsible for, the condition of the horse entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-8-01 of the Administrative Code, the trainer of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the care or attendance of the horse may, in the discretion of the commission, be subjected to penalties provided in paragraph (B) of this rule.
 {¶ 12} The absolute insurer rule imposes strict liability on the trainer for the presence of prohibited foreign substances in a horse. Belcher, ¶ 16 (citations omitted). The negligence of a third-party does not affect appellant's liability for a violation of the absolute insurer rule, although it can affect the penalty imposed for a violation. Id. Ohio Adm. Code 3769-8-02(A) and (B).
 {¶ 13} In his first assignment of error, appellant contends the trial court erred by not independently reviewing and weighing the evidence. In particular, appellant argues the evidence showed that a foreign substance was not carried in the body of First Choice on race day.
 {¶ 14} Foreign substance is defined in Ohio Adm. Code 3769-8-01(A)(2) as follows:
"Foreign Substances" shall mean all classified substances, except those which exist naturally in the untreated horse at normal physiological concentrations, and shall include all narcotics, stimulants, depressants or other drugs.
 {¶ 15} Appellant contends that the substance detected in the urine sample was a natural substance because the horse had processed the Albuterol and combined sulfate with it. Appellant also argues that no unaltered Albuterol was found in the horse's urine, thus only the metabolite was detected in the horse's urine after it had been processed by the horse, and therefore no foreign substance was found in the horse's body on race day.
 {¶ 16} A review of the record shows that the trial court did review the evidence and that substantial, reliable, and probative evidence was presented in support of the Commission's determination that First Choice had Albuterol in its system on race day. It is undisputed that Albuterol was administered to First Choice more than 48 hours prior to race day. Also, it was undisputed that, after the race, the drug was still present in the urine of the horse. The fact that the drug had been processed and combined with sulfates in the horse's body is irrelevant. The horse's urine was tested using reliable scientific drug testing methodology and came back with a positive result for Albuterol. All of appellant's arguments to the contrary cannot alter this fact. Therefore, the trial court did not abuse its discretion in this regard.
 {¶ 17} Appellant also argues the Commission's decision is arbitrary because there exists a threshold level for cocaine which would allow a horse to have a miniscule amount of cocaine detected in the sample and the test would still be reported out as negative, while any detectable amount of Albuterol is considered a violation. Without additional information as to testing methodology for cocaine and other foreign substances, it is impossible to know why the rules are interpreted as they are. It is quite possible that there are limits to the ability of laboratories to test for some substances without the danger of false positives or contamination. The medication rules are designed to protect the integrity of horse racing, guard the health of the horses, and safeguard the public and racing participants. Ohio Adm. Code3769-8-01(B)(1). Therefore, this kind of inquiry is more properly addressed to the rulemaking authority of the Commission. Appellant's first assignment of error is overruled.
 {¶ 18} In his second assignment of error, appellant contends the two rules under which appellant was charged are in conflict and must be read in pari materia. Under appellant's interpretation of the rules, appellant should be permitted to rebut any presumption of negligence, and in this case appellant claims he did so successfully.
 {¶ 19} In Belcher, this court addressed the interplay between the two provisions and found the degree of culpability is relevant in terms of establishing a violation only in connection with Ohio Adm. Code3769-8-01(B), the prima facie rule, but not Ohio Adm. Code 3769-8-01(A), the absolute insurer rule. Id. Under the absolute insurer rule, however, evidence of appellant's lack of culpability is relevant in terms of mitigation, but not in terms of whether or not a violation has been established. See id; Ohio Adm. Code 3769-8-02(A) and (B).
 {¶ 20} Here, the penalty selected by the Commission was within the range of sanctions permitted, and this court does not have the authority to modify that decision if the Commission's decision is supported by reliable, probative and substantial evidence and is supported by law.Belcher, at ¶ 18 and 19. See, also, Henry's Café, Inc. v. Bd.of Liquor Control (1959), 170 Ohio St. 233. Appellant's second assignment of error is overruled.
 {¶ 21} Based on the foregoing, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.