OPINION
{¶ 1} Plaintiff-appellant, Columbus Check Cashers, Inc., appeals from a judgment of the Franklin County Municipal Court that denied its request for attorney fees resulting from a legal action against defendant-appellee, Michael Rodgers. For the reasons set forth below, we affirm.
 {¶ 2} On January 2, 2007, appellee entered into a consumer loan agreement (payday advance) with appellant to borrow $300. Appellee executed a written loan *Page 2 
agreement setting forth the terms of the loan. The agreement included a provision containing the following pertinent language:
 I agree to repay Columbus Check Cashers, Inc. hereafter called the Lender, the full amount borrowed, including all origination fees, Interest fees, check collection charges * * * and such additional fees or charges lender may assess Borrower which are not specifically prohibited by the Ohio Rev. Code Sec. 1315.35, et seq. As is now enacted, including but not limited to reasonable attorney fees necessary to collect any or all of the above categories of principle [sic] and charges * * *
 {¶ 3} To secure the loan, appellee tendered a post-dated, personal check for $345, which included the loan amount along with the loan origination fee of $30 and a finance charge of $15. In accordance with the agreement, appellant deposited the check on January 16, 2007. The check was submitted to appellee's bank, but was returned to appellant with a notation indicating that appellee's checking account lacked sufficient funds to cover the check amount. Appellant unsuccessfully attempted to collect the debt owed by appellee.
 {¶ 4} On August 3, 2007, appellant filed a complaint against appellee, seeking damages for breach of contract. On October 2, 2007, a magistrate of the Franklin County Municipal Court tried the matter; appellee did not appear. By amended decision filed November 16, 2007, the magistrate awarded appellant judgment in the amount of $370 (which included the loan amount of $300, the loan origination fee of $30, a check collection charge of $20, and a returned check charge of $20), with contract interest of five percent per month from the date of the loan on the loan amount of $300 and statutory interest of eight percent per annum from the date of judgment on the remaining $70, plus court costs. The magistrate concluded that appellant was not entitled to recover attorney fees, as appellant had failed to prove either that the attorney fee provision was authorized *Page 3 
by statute or enforceable under a contract theory. On November 19, 2007, the trial court adopted the magistrate's decision and entered judgment accordingly.
 {¶ 5} On November 28, 2007, appellant filed an objection, challenging only the magistrate's decision not to award attorney fees. By decision filed January 28, 2008, the trial court overruled the objection. Specifically, the trial court determined that there was neither specific statutory authorization for an award of attorney fees nor was the contractual attorney fee shifting provision enforceable under Ohio law. The trial court further found that appellant failed to produce competent, credible evidence as to the reasonableness of the attorney fees. By entry filed the same day, the trial court entered judgment in accordance with its decision.
 {¶ 6} Appellant timely appeals, setting forth a single assignment of error, as follows:
 THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE DICTATE OF NOTTINGDALE HOMEOWNERS ASSN., INC. V. DARBY (1987), 33 OHIO ST.3D 32 WHEN IT REFUSED TO AWARD THE APPELLANT ITS ATTORNEY FEES.
 {¶ 7} Appellant contends the trial court erred in denying its request for attorney fees. Ohio courts follow the so-called "American rule," which requires that each party involved in litigation pay his or her own attorney fees. McConnell v. Hunt Sports Ent. (1999),132 Ohio App.3d 657, 699, citing Sorin v. Bd. of Edn. of Warrensville Hts. SchoolDist. (1976), 46 Ohio St.2d 177, 179. There are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting. Id., citing Pegan v.Crawmer, 79 Ohio St.3d 155, 156, 1997-Ohio-176. (Further citations omitted.) *Page 4 
 {¶ 8} Here, there is no suggestion of any bad faith on the part of appellee, who never appeared in the case. Thus, only two possible exceptions to the "American rule" remain: that statutory provisions authorize an award of attorney fees, or that an enforceable contractual provision provides for attorney fee shifting.
 {¶ 9} We note initially that appellant has failed to provide a transcript of the hearing before the magistrate. As the instant case involves the interpretation of statutory and contractual provisions, both matters of law, and a copy of the contract is attached to appellant's complaint, our consideration of appellant's assignment of error is not hindered by its failure to provide the transcript.
 {¶ 10} Appellant first contends that R.C. 1315.40 and 1315.41 provide statutory authorization for an award of attorney fees. We disagree.
 {¶ 11} Appellant is a licensed check cashing business as defined in R.C. 1315.21(B) and, as such, its loan transactions are subject to the limitations set forth in R.C. 1315.39, 1315.40, and 1315.41. Pursuant to R.C. 1315.39, appellant may charge appellee interest at the rate of five percent per month. R.C. 1315.40(A) and (B) allow appellant to charge appellee a loan origination fee of $30, check collection charges of $20, and $20 for the dishonored check. In addition, R.C. 1315.40(C) permits appellant to recover "[d]amages, costs, and disbursements" to which it may be entitled to by law in a civil action to collect a loan after default. R.C. 1315.41(C) prohibits appellant from charging, collecting or receiving, directly or indirectly, any additional fees or charges not expressly authorized by R.C. 1315.39 and 1315.40.
 {¶ 12} As appellant acknowledges, there is no language in either R.C. 1315.39 or 1315.40 expressly authorizing it to collect attorney fees in prosecuting an action to recover on the defaulted loan. As noted by the trial court, the absence of any specific *Page 5 
reference to attorney fees stands in stark contrast to the very specific list of items set forth by the General Assembly in R.C. 1315.39 and1315.40 that a check cashing business may recover. Appellant contends, however, that attorney fees are the type of "[d]amages, costs, and disbursements" contemplated by R.C. 1315.40(C). We disagree.
 {¶ 13} Appellant has not cited, nor has our research revealed, any Ohio case that has interpreted "[d]amages, costs, and disbursements" in R.C. 1315.40(C) to include attorney fees or has otherwise construed the general language in R.C. 1315.39 and 1315.40 as authorizing an award of attorney fees to check cashing businesses. We agree with the trial court that "[a]ny such authorization would be in derogation of the common law American Rule, and it is axiomatic that statutes that are in derogation of common law must be strictly and narrowly construed."
 {¶ 14} As noted by both the magistrate and the trial court, the General Assembly has expressly authorized the recovery of attorney fees in numerous circumstances.[1] Thus, it is clear that the General Assembly knows how to specifically authorize the recovery of attorney fees. In Sutherland v. Nationwide Gen. Ins. Co. (1995),102 Ohio App.3d 297, this court held that it would not find statutory authorization for attorney fees in the absence of a specific reference in the statute to such fees (noting that "the General Assembly is certainly aware of the method, means and procedure for legislating attorney fee shifting. This is evident from the numerous provisions within [the Revised Code] which expressly authorizes recovery of attorney fees"). Id. at 300. Here, the General Assembly's failure to include a specific provision for attorney fees in R.C. 1315.39 or 1315.40, while including such a provision in numerous other statutes, clearly indicates its *Page 6 
intention to deny attorney fees to check cashing businesses. We agree with the magistrate that "[t]here is no reason to believe that the Ohio General Assembly, while including the words `attorney's fees' in so many other statutes, would choose to camouflage attorney's fees in a vague reference to `[d]amages, costs and disbursements' in ORC § 1315.40. If the General Assembly had intended to allow check cashing businesses to recover attorney's fees, it would have provided so expressly." Because attorney fees are not specifically authorized in R.C. 1315.39 or1315.40, R.C. 1315.40(C) prohibits appellant from collecting them.
 {¶ 15} Having determined that there is no statutory authorization for the award of attorney fees in the instant case, we next consider appellant's contention that the contract between the parties includes an enforceable attorney fee shifting provision.
 {¶ 16} In Miller v. Kyle (1911), 85 Ohio St. 186, the Ohio Supreme Court found a stipulated attorney fee provision in a promissory note contrary to public policy and thus unenforceable because it promoted litigation and evaded the usury laws. Id. The court based its holding on the fact that the provision was contained in a negotiable instrument where, in general, the terms of the instrument are not freely negotiable. Id.
 {¶ 17} In Worth v. Aetna Cas. Sur Co. (1987), 32 Ohio St.3d 238, two sophisticated parties freely negotiated the terms of an indemnity agreement that included an attorney fee provision. The Ohio Supreme Court upheld the indemnity agreement and underlying attorney fee provision. However, the court recognized the dangers inherent in contracts for the payment of attorney fees upon default in payment of a debt and reaffirmed the unenforceability of those contracts, stating:
 When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom *Page 7 
the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.
Id. at 242-243.
 {¶ 18} Appellant relies upon Nottingdale Homeowners' Assn., Inc. v.Darby (1987), 33 Ohio St.3d 32, decided some six weeks afterWorth, in support of its contention that the attorney fee shifting provision at issue here is enforceable under Ohio law.Nottingdale involved a non-commercial foreclosure action in which a condominium owners' association sought to enforce an attorney fee provision in the condominium declaration against one of the condominium owners. Citing a fundamental right to freely contract, the court upheld the validity of the provision, noting that it was freely agreed to by the parties and that it reciprocally benefited all condominium owners in that it protected association resources when the association had to pursue litigation against an individual owner who would not pay his or her dues. Id. at 36-37. Thus, the provision was enforceable in the context where it was shown to be the product of free negotiation between parties "with equal bargaining positions and under neither compulsion nor duress." Id. at 35. The court specifically distinguished the provisions of the condominium declaration in Nottingdale from the unenforceable one-sided "stipulation to pay attorney fees" in a debt instrument in Miller. Id. Indeed, the court specifically stated that its decision would not apply to a contract of adhesion, where the party had little or no bargaining power and no realistic choice as to the terms of the contract. Id. at fn. 7. *Page 8 
 {¶ 19} Contrary to appellant's assertions, the present matter is unlike the situation in Nottingdale. Here, appellee receives no benefit from having to pay appellant's attorney fees. Further, this court and others have interpreted Nottingdale as holding that contractual attorney fee provisions remain unenforceable in situations where there is unequal bargaining power, where the provision promotes litigation and illegal acts such as evading the usury laws, where the provision acts as a penalty, and where the terms of the provision are not freely negotiable. See, e.g., First Capital Corp. v. G J Industries, Inc. (1999),131 Ohio App.3d 106, 113; CitFed Mtge. Corp. of America v. Parish (1997), Franklin App. No. 96APE07-909; K A Cleaning, Inc. v. Materni, Lucas App. No. L-05-1293, 2006-Ohio-1989, ¶ 10-11; Motorist Ins. Cos. v.Shields, Athens App. No. 00CA26, 2001-Ohio-2387; Vermeer of S. Ohio,Inc. v. Argo Constr. Co. (2001), 144 Ohio App.3d 271, 276-278.
 {¶ 20} The provision at issue creates a one-sided obligation on the part of appellee to pay attorney fees in the event appellant files suit. By its terms, the provision would not operate to permit appellee to recover his attorney fees should he prevail in collection litigation initiated by appellant or if he initiated legal proceedings against appellant to vindicate his own rights. The provision here obviously works as a penalty, and its one-sided, creditor-favored nature promotes litigation. As such, it is akin to the provisions discussed inMiller, Worth, First Capital, CitFed, K A Cleaning, Motorist, andVermeer, and is thus unenforceable as a matter of law.
 {¶ 21} We note, finally, that, even if the attorney fee provision were enforceable, appellant would still not be entitled to an award of attorney fees. As a general matter, a party seeking an award of attorney fees bears the burden of proving the reasonableness of those fees.Ohio State Univ. v. Alexander, Cuyahoga App. No. 87983, 2007-Ohio-264, *Page 9 
¶ 13. This burden of proof must be met regardless of an agreement to pay attorney fees. Id. Here, the trial court determined that appellant failed to produce competent, credible evidence as to the reasonableness of the fees. Resolution of this issue requires a review of the evidence presented at trial, but, as noted, appellant has failed to file a transcript of the hearing or a statement of the evidence pursuant to App. R. 9(C). The duty to provide a transcript for appellate review falls upon the appellant because the appellant bears the burden of demonstrating by reference to matters in the record. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. "When [the] portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Id. In the absence of a transcript, or any alternative form of the record permitted by App. R. 9, we must presume that the circumstances were as the trial court described.
 {¶ 22} For the foregoing reasons, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
 PETREE and SADLER, JJ., concur.
T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] As the magistrate and the trial court include in their decisions numerous examples of statutes that expressly provide for the recovery of attorney fees, we opt not to outline them here. *Page 1