[Cite as *Cowans v. Ohio State Racing Comm.*, 2014-Ohio-1811.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William D. Cowans, | : | |
| Appellant-Appellant, | : | No. 13AP-828 |
| | | (C.P.C. No. 12 CVF 15675) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio State Racing Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on April 29, 2014

*Graff & McGovern, L.P.A.*, and *John A. Izzo*, for appellant.

*Mike DeWine,* Attorney General, *Andromeda McGregor* and *Christie S. Collins*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, William D. Cowans, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, the Ohio State Racing Commission ("the Commission") finding appellant in violation of the Commission's horse racing rules and directing appellant to return the purse and pay the costs of the appeal. We affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} Appellant is a licensed thoroughbred owner and trainer. He was the trainer for "Potential Argument," one of the winning horses at Beulah Park on February 10, 2012. Laboratory testing of blood and urine samples collected from Potential Argument the day of the race reported a positive finding of Ranitidine, a medication used to prevent gastric ulcers. As a result of the laboratory test results, the Stewards at Beulah Park issued an April 13, 2012 ruling finding appellant violated the following rules: Ohio Adm.Code 3769-

2-26(A)(10); 3769-8-01(A)(2); 3769-8-01(B)(1), (B)(10), (B)(13), and (B)(16); and 3769-8-02.  The Stewards' ruling disqualified Potential Argument and ordered appellant to return the purse pursuant to Ohio Adm.Code 3769-7-45.

{¶ 3}  On April 17, 2012, appellant filed a timely appeal to the Commission for a de novo hearing.  The Commission issued a letter dated April 20, 2012 acknowledging appellant requested a hearing to object to the ruling that his horse "tested positive for Ranitidine 'Zantac' at Beulah Park on February 10, 2012." (R. 19 at 3.) The letter advised appellant that the Commission had scheduled a hearing as authorized by R.C. 119.07 but continued the hearing to a date uncertain.  The letter also advised appellant that he may appear at the hearing in person or with counsel and that he could present written arguments or present evidence and examine witnesses.   The Commission referred the matter to hearing examiner Chester T. Lyman ("hearing examiner") who conducted the hearing on June 27, August 14, and September 21, 2012.   In a Report and Recommendation issued October 30, 2012, the hearing examiner overruled appellant's motion to dismiss the action based on an alleged procedural irregularity.  The Report and Recommendation also recommended appellant forfeit the purse and pay the costs of the adjudication hearing.  Appellant filed timely objections to the hearing examiner's Report and Recommendation on November 21, 2012.

{¶ 4}  On December 13, 2012, the Commission adopted the hearing examiner's Report and Recommendation by unanimous vote.  Pursuant to R.C. 119.12, appellant appealed the Commission's order to the Franklin County Common Pleas Court.  In an August 27, 2013 judgment entry, the common pleas court, after reviewing the record from the hearing, affirmed the Commission's order that appellant return the purse from the February 10, 2012 race and that appellant pay the costs of the hearing in the amount of $2,616.15.  Appellant timely appeals.

## II.  Assignments of Error

{¶ 5}  On appeal, appellant assigns the following three assignments of error for our review:

> [1.] The common pleas Court abused its discretion when affirming an Order that was not in accordance with law.

[2.] The common pleas Court abused its discretion when affirming an Order that was not supported by reliable, probative, and substantial evidence.

[3.] The common pleas Court abused its discretion when it determined the Commission has the authority to promulgate a rule that assesses the costs of an administrative hearing to a licensee.

For ease of discussion, we address appellant's assignments of error out of order.

### III. Standard of Review

{¶ 6} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 7} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Second Assignment of Error – Reliable, Probative, and Substantial Evidence

{¶ 8} We first address appellant's second assignment of error alleging the common pleas court abused its discretion when it affirmed the Commission's order because reliable, probative, and substantial evidence did not support that order. More specifically, appellant asserts: (1) the hearing examiner copied information from another case into his Report and Recommendation; (2) the hearing examiner made multiple inaccurate statements in his Report and Recommendation; (3) the laboratory's testing director was not a credible witness; (4) the hearing examiner incorrectly discounted the testimony of one witness; and (5) the Commission considered information that was not admitted at the hearing.

{¶ 9} Ohio Adm.Code 3769-8-02(A), commonly known as the absolute insurer rule, provides that "[t]he trainer shall be the absolute insurer of, and responsible for, the condition of the horse entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-8-01 of the Administrative Code, the trainer of the horse * * * may, in the discretion of the commission, be subjected to penalties provided in paragraph (B) of this rule."

{¶ 10} "The absolute insurer rule imposes strict liability on the trainer for the presence of drugs in a horse." *Belcher v. Ohio State Racing Comm.*, 10th Dist. No. 02AP-998, 2003-Ohio-2187, ¶ 16, citing *O'Daniel v. Ohio State Racing Comm.*, 37 Ohio St.2d 87, 90 (1974); *Sahely v. Ohio State Racing Comm.*, 10th Dist. No. 92AP-1430 (Apr. 6, 1993). Appellant's level of care does not affect appellant's liability for a violation of the absolute insurer rule. *Belcher* at ¶ 16, citing *Dewbre v. Ohio State Racing Comm.*, 16 Ohio App.3d 370, 373 (12th Dist.1984). The only evidence necessary to establish a violation of Ohio Adm.Code 3769-8-02(A) "is a positive test for a prohibited substance." *Id.*

{¶ 11} Here, it is undisputed that Potential Argument tested positive for the presence of Ranitidine, a foreign substance under the definition set forth in Ohio Adm.Code 3769-8-01(A)(2). The record indicates appellant did not challenge the chain of custody of the test sample, and he did not request a test of a split sample to allow for

independent testing of the sample at appellant's expense.  Thus, the main issue at the hearing was whether the Commission's laboratory reliably tested the urine sample for the presence of Ranitidine.

### A. Hearing Officer Report

{¶ 12}  Initially, appellant alleges the hearing examiner copied information from an entirely different case and erroneously included it in the Report and Recommendation for the case at bar.  Appellant argues the information in the Report cannot be reliable if it originated in another case and, because the Report and Recommendation did not accurately reflect the evidence and information presented at the hearing, the Commission should not have relied on it.  Appellant also asserts the hearing examiner's Report and Recommendation contains so many inaccurate statements that reliable, probative, and substantial evidence does not support the Commission's order.

{¶ 13} If appellant is correct that large portions of the Report originated in an entirely separate case and have no relation to appellant's case before the Commission, his frustration is understandable.  Nevertheless, where the extraneous information contained in the Report and Recommendation is not dispositive of the Commission's decision and does not affect appellant's substantial rights, the common pleas court does not err in affirming the Commission's order containing those extraneous statements.  *See Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 686 (1oth Dist.1992).

{¶ 14} Indeed, as the common pleas court noted, "[t]here is nothing in the transcript indicating that any member of the Commission, much less the Commission as a whole, relied on the allegedly erroneous or extraneous portions of the Report and Recommendation in determining that Potential Argument had the foreign substance Ranitidine in its body on race day."  (R. 46, Decision and Entry, 8.)  The common pleas court also correctly noted that absent such a showing, any errors in the hearing examiner's Report and Recommendation are harmless.  *See Smith v. Flesher*, 12 Ohio St.2d 107 (1967), paragraph one of the syllabus (stating that "[i]n order to support reversal of a judgment, the record must show affirmatively not only that the error intervened but that such error was to the prejudice of the party seeking such reversal").

{¶ 15} Even where a hearing examiner's Report is less than exemplary, the Commission "has extensive authority to review and resolve independently evidentiary

conflicts in the record." *Bharmota v. State Medical Bd. of Ohio*, 10th Dist. No. 93AP-630 (Dec. 7, 1993) (concluding appellant's argument that the medical board improperly relied on a "misleading hearing examiner report" implicitly assumes the board relied solely on the hearing examiner's report as the evidentiary basis for its opinion), citing *In re Williams*, 60 Ohio St.3d 85, 87 (1991). Thus, the issue is whether, even in light of the alleged mistakes in the hearing examiner's Report and Recommendation, there was enough other reliable, probative, and substantial evidence to support the Commission's order such that the common pleas court did not abuse its discretion in affirming the order.

### B. Laboratory Director

{¶ 16} Soobeng Tan, the director of the Analytical Toxicology Lab for the Ohio Department of Agriculture which has a contract with the Commission to test racehorse samples, testified at length concerning the procedures employed in examining the urine sample procured from Potential Argument on race day. As the common pleas court noted, no witness testified in contradiction to Tan's testimony.

{¶ 17} Tan testified that after the urine sample initially screened positive for Ranitidine, his laboratory conducted additional confirmatory tests on the sample. After explaining in detail the testing procedures employed by the lab, Tan testified the test results were accurate to a reasonable degree of scientific certainty. On cross-examination, Tan clarified that this test is a "qualitative test," so the term "degree of scientific certainty" does not apply to the concentration. (Tr. Vol. II, 307-09.) He explained that "in a qualitative identification situation like this case, Ranitidine, when we call a positive on that drug, we are 100 percent sure that this drug is present in the test sample, and there's no uncertainty." (Tr. Vol. II, 355-56.)

{¶ 18} It is from this testimony that the common pleas court determined reliable, probative, and substantial evidence supports the Commission's factual finding that Ranitidine was in the urine obtained from the racehorse on race day. Appellant points to nothing to indicate the common pleas court abused its discretion in so doing, other than to disagree with the underlying credibility and weight determinations.

{¶ 19} Appellant argues Tan lacked credibility because his testimony contained inconsistencies. However, the common pleas court engaged in its own consideration of

Tan's credibility and concluded the hearing examiner "appropriately determined the witness' credibility." (R. 46, Decision and Entry, 7.) To the extent appellant suggests we reweigh the credibility of the witnesses, "such an exercise is not appropriate for this court's role in reviewing the common pleas court's decision." *Ohio Dept. of Rehab. & Corr. v. Price*, 10th Dist. No. 10AP-260, 2010-Ohio-5629, ¶ 21.

{¶ 20} Additionally, appellant suggests the common pleas court accorded too much weight to Tan's testimony because the Commission never qualified Tan as an expert. While the record shows the Commission never asked the hearing examiner to determine whether Tan was an expert witness, as Rule 701 of the Ohio Rules of Evidence uses that term, Tan testified as to his training, experience, and education, as well as to matters requiring specialized expertise and the scientific processes involved in the laboratory testing. Further, the failure to formally certify Tan as an expert does not mean the hearing examiner could not consider and weigh his testimony. As a general rule, "administrative agencies are not bound by the strict rules of evidence applied in courts." *Buckles v. Franklin City Bd. of Revision*, 10th Dist. No. 07AP-932, 2008-Ohio-1728, ¶ 23 (finding appellant's argument unpersuasive that a witness' testimony was accorded too much weight since there was not a sufficient foundation to establish him as an expert), citing *Haley v. Ohio State Dental Bd.*, 7 Ohio App.3d 1, 6 (2d Dist.1982).

### C. Witness Testimony

{¶ 21} Appellant similarly argues the hearing examiner incorrectly discounted the testimony of Robert Schwartz, a veterinarian, because of a perceived bias or conflict of interest in favor of appellant. The hearing examiner and subsequently the Commission were entitled to accord whatever evidentiary weight they deemed appropriate to the witness' testimony. The common pleas court concluded the Commission appropriately determined the weight and credibility given the witness' testimony. Though appellant attempts to challenge the weight given to the testimony of some witnesses over others, "again, it is the function of the [Commission], and not this court, to weigh the credibility of such testimony and reach factual findings." *Houser v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 14, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995).

**D. Exhibit No. 10**

{¶ 22} Appellant further asserts reliable, probative, and substantial evidence did not support the Commission's order because the Commission considered information that the hearing examiner did not admit at the hearing. More specifically, appellant contends the hearing examiner determined exhibit No. 10 was "not properly substantiated for admission purposes," but the document nevertheless appeared in the materials provided to the Commissioners prior to the December 13, 2012 meeting. (R. 19, Report and Recommendation, 25.)

{¶ 23} This argument is speculative. Appellant points to nothing in the record that indicates the Commission actually considered exhibit No. 10. Absent a showing to the contrary, we must presume the regularity of the administrative proceedings. *See Arnold v. Ohio Adult Parole Auth.*, 10th Dist. No. 11AP-120, 2011-Ohio-4928, ¶ 14 (stating "[w]here nothing in the record indicates procedural irregularity, a presumption of regularity attaches to administrative agency proceedings"), citing *Freeman v. Ohio Dept. of Human Servs.*, 10th Dist. No. 95APE03-359 (Dec. 14, 1995), citing *State ex rel. Ohio Bldg. Restoration, Inc. v. Indus. Comm.*, 64 Ohio St.3d 188, 189 (1992).

{¶ 24} Further, even if the Commission did review exhibit No. 10, other reliable, probative, and substantial evidence in the record supports the Commission's order finding appellant violated Ohio Adm.Code 3769-8-02(A). *See Abunku v. State Med Bd. of Ohio*, 10th Dist. No. 11AP-906, 2012-Ohio-2734, ¶ 20 (finding it was not an abuse of discretion for the trial court to affirm an order of the state medical board revoking appellant's certificate to practice medicine and surgery because "even if it was inappropriate for the hearing examiner to admit" a DEA order to show cause which the parties resolved prior to the determination of the allegations at the hearing, the appellant "was not prejudiced because other reliable, probative, and substantial evidence in the record proves" the violations).

{¶ 25} Based on the record before us, we cannot find the common pleas court abused its discretion in finding that reliable, probative, and substantial evidence supports the Commission's order. Thus, we refuse to substitute our judgment for that of the Commission or the common pleas court. *See, e.g., id.* at ¶ 24.

{¶ 26} Because appellant cannot demonstrate the Commission relied on the extraneous information in the hearing examiner's Report and Recommendation, the mistakes in the Report and Recommendation, or the improperly included exhibit, and because other reliable, probative, and substantial evidence supports the Commission's order, we cannot find that the common pleas court abused its discretion in affirming the Commission's order. Accordingly, we overrule appellant's second assignment of error.

## V. First Assignment of Error - Administrative Order Not in Accordance with Law

{¶ 27} In his first assignment of error, appellant asserts the common pleas court erred in affirming an administrative order that was not in accordance with law. Within this assignment of error, appellant raises several sub-arguments: (1) the Commission failed to properly issue a notice in accordance with R.C. 119.07; (2) the Commission did not consider appellant's objections to the hearing examiner's Report and Recommendation; and (3) the hearing examiner incorrectly construed the return of the purse as a mandatory rather than discretionary penalty.

### A. Notice

{¶ 28} Appellant first argues the Commission failed to issue a proper notice of opportunity for hearing pursuant to R.C. 119.o7.

{¶ 29} "When an administrative agency proposes to take disciplinary action against a party, R.C. 119.07 requires the agency to 'give notice to the party informing the party of the party's right to a hearing.' " *Little v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-220, 2010-Ohio-5627, ¶ 17, quoting R.C. 119.07. The notice "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days." R.C. 119.07. Appellant contends that although he received a letter from the Commission advising him a hearing was scheduled for a date uncertain, the letter did not meet the statutory requirements of R.C. 119.07 because it did not advise appellant of his right to a hearing and it did not include a statement that he was entitled to a hearing within 30 days of the time of mailing of the notice.

{¶ 30} Appellant does not argue that he did not receive notice, nor does he argue that the notice he received resulted in any harm. Rather, appellant argues strict

compliance with R.C. 119.07 is mandatory due to the General Assembly's use of the word "shall" in the statute.

{¶ 31} In response, the Commission argues the notice requirements of R.C. 119.07 do not apply to the Commission because this case falls under an exception to the notice requirements found in R.C. 119.06(C). More specifically, the Commission asserts the requirements for a proper notice of opportunity for hearing found in R.C. 119.07 only apply in cases where R.C. 119.06 mandates an opportunity for hearing *before* the issuance of an order. The Commission classifies decisions by the Stewards as among those administrative orders that are effective without a hearing and thus, it argues, the Commission was not required to comply with the notice requirements of R.C. 119.07 in this case.

{¶ 32} As a general rule, R.C. 119.06 requires an administrative agency to conduct a hearing before issuing any adjudication order. *D.L. Lack Corp. v. Liquor Control Comm.*, 191 Ohio App.3d 20, 2010-Ohio-6172, ¶ 12 (10th Dist.). However, pursuant to R.C. 119.06(C), an adjudication hearing is not necessary if "the rules of the agency or the statutes pertaining to such agency specifically give a right of appeal to a higher authority within such agency * * * and also give the appellant a right to a hearing on such appeal." R.C. 119.06(C); *see also id.* at ¶ 12.

{¶ 33} Here, R.C. 3769.091 allows the Commission to delegate to the track Stewards "the power to suspend licenses for not to exceed one year and to impose fines not to exceed one thousand dollars for any violation of the rules or orders of the commission." That same statute further provides a right to appeal the Stewards' decision to "a higher authority within [the] agency," i.e., the Commission. R.C. 119.06(C); R.C. 3769.091.

{¶ 34} Because the statutes governing horse racing gave appellant a right to appeal the Stewards' decision to the Commission and obtain a hearing on the appeal, the R.C. 119.06(C) exception to the hearing requirement applies. *Id.* at ¶ 14. The legislature presumably created the exception because it is illogical to require notice of a right to a hearing *after* the party has already requested such hearing. Here, appellant's hearing request was the impetus for the letter, and a 30-day notice to appeal would be senseless.

{¶ 35} The hearing examiner, the Commission, and the common pleas court all agreed with the Commission's characterization of when the notice requirements of R.C. 119.07 apply. We find no error in the common pleas court reaching that conclusion.

{¶ 36} Further, even if we were to entertain appellant's insufficiency of notice argument, we note that appellant indisputably knew of the precise charges against him, knew of the hearing date, attended the hearing represented by counsel, and called witnesses on his behalf. *See Little* at ¶ 18 (noting due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"), quoting *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19. Thus, even though the R.C. 119.06(C) exception applied here and the Commission was not legally required to provide appellant with the type of notice described in R.C. 119.07, the notice appellant actually received was reasonably calculated to place appellant on notice of the charges against him and to allow him an adequate opportunity to respond to those charges. We find appellant's argument as to insufficiency of notice under R.C. 119.07 unpersuasive.

## B. Failure to Consider Objections

{¶ 37} Appellant next argues the common pleas court erred in affirming the Commission's order because appellant contends the Commission did not consider appellant's objections to the hearing examiner's Report and Recommendation.

{¶ 38} Appellant filed objections to the hearing examiner's Report and Recommendation on November 21, 2012. There is no mention of appellant's objections by the Commission in the minutes from the December 13, 2012 Commission meeting when the Commission adopted the hearing examiner's Report. Because the Commission did not expressly state that it reviewed appellant's objections, appellant asserts the only conclusion is that the Commission did not consider the objections and, therefore, appellant argues this court must reverse the Commission's order.

{¶ 39} Appellant does not point to any authority suggesting an administrative body must affirmatively state on the record that it considered proffered objections to the hearing examiner's Report. "An appellate court must presume the regularity of administrative proceedings." *Houser* at ¶ 20, 21, citing *Ostrander v. Parker-Fallis*

*Insulation Co.*, 29 Ohio St.2d 72 (1972). *See also Perry v. Joseph*, 10th Dist. No. 07AP-359, 2008-Ohio-1107, ¶ 20 (stating "[a]n appellate court must presume the regularity and validity of the proceedings in the trial court, absent a record which affirmatively demonstrates otherwise"), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197 (1980). Where the record is silent, we must presume the Commission reviewed the objections before adopting the hearing examiner's order, "absent an affirmative showing to the contrary." *Perry* at ¶ 20, citing *Matter of Hermann*, 2d. Dist. No. 94 CA 12 (Jan. 27, 1995).

{¶ 40} Further, a review of the transcript of the December 13, 2012 commission meeting shows appellant presented the substance of his objections orally before the Commission. Appellant specifically mentioned the written objections he filed prior to the commission's meeting, even referencing particular objection numbers. The mere fact that the Commission did not explicitly state on the record that it had considered appellant's objections does not mean that it did not consider the entire record of proceedings, including appellant's objections, before rendering its decision. *See Houser* at ¶ 21 (concluding a claimant's contention that the administrative agency failed to consider the entire record due to the agency's statement in its decision that "[claimant] presented no evidence in the hearing in this matter" when in fact evidence in the record may have supported claimant's position does not "overcome the presumption of the regularity of the [agency's] proceedings").

{¶ 41} Thus, as to appellant's assertion that the Commission did not consider his objections as a procedural matter, that argument is not well-taken.

### C. Mandatory or Discretionary Penalty

{¶ 42} Appellant next argues that the common pleas court erred in affirming the Commission's order because the hearing examiner construed the forfeiture of the purse as mandatory. Appellant contends that the return of the purse was a permissive penalty rather than a mandatory penalty because the word "shall" sometimes means "may."

{¶ 43} The regulatory framework is instructive. Ohio Adm.Code 3769-8-01(B)(1) governs medication and testing in thoroughbred horses. The rule provides that "[e]xcept for regulatory thresholds of such non-steroidal anti-inflammatory drugs authorized for use by order of the commission, and except for those horses eligible for the use of

furosemide as permitted by * * * this rule, no horse entered to race shall carry in its body on race day any prohibited foreign substance." By definition, Ranitidine is a foreign substance under the rule because it does not "exist naturally in the untreated horse at normal physiological concentrations." Ohio Adm.Code 3769-8-01(A)(2). The rule establishes a zero tolerance policy for the presence of foreign substances in race horses unless the Commission creates an exception or establishes a permissible threshold level of the foreign substance.

{¶ 44} In the event a test sample analysis from a race horse "result[s] in a violation of paragraph (B)(1) * * * of this rule, the horse shall be disqualified in accordance with rule 3769-7-45 of the Administrative Code and any licensee found in violation is subject to penalties contained in paragraph (B)(15) of this rule." Ohio Adm.Code 3769-8-01(B)(13). Ohio Adm.Code 3769-7-45(A)(1) specifies: "If such violation would disqualify a horse or horses, the owner or owners of said horse or horses shall forfeit the purse and any trophy or awards and the remaining horses placed accordingly."

{¶ 45} Appellant does not argue that the Commission lacked the authority to order the return of the purse as a penalty; rather, appellant argues "shall" means "may" in this situation and had the Stewards and the hearing officer construed the return of the purse as a discretionary penalty, they would have voted not to order the return of the purse in this case.

{¶ 46} Because loss of the purse is undoubtedly within the range of penalties allowed by the Commission's rules and the Commission has the discretion to impose said penalty, the Commission's decision as to penalty cannot be disturbed on appeal if it is supported by reliable, probative, and substantial evidence. *Belcher* at ¶ 18 citing *FOE Aerie 2177 Greenvillle v. Ohio State Liquor Control Comm.*, 10th Dist. No. 01AP-1330, 2002-Ohio-4441, ¶ 28.

{¶ 47} We also note that to the extent appellant argues the Commission's decision is arbitrary because of the nature of Ranitidine as therapeutic rather than performance-enhancing, "this kind of inquiry is more properly addressed to the rulemaking authority of the Commission" rather than to this court on appeal. *Roberson v. Ohio State Racing Comm.*, 10th Dist. No. 03AP-480, 2004-Ohio-127, ¶ 17.

{¶ 48} Where, as here, the penalty imposed by the Commission is within the range of permitted sanctions, this court cannot conclude the common pleas court erred in affirming the Commission's order with regard to penalty. *Id.* at ¶ 20 (holding that when "the penalty selected by the Commission was within the range of sanctions permitted, * * * this court does not have the authority to modify that decision if the Commission's decision is supported by reliable, probative and substantial evidence and is supported by law"), citing *Belcher* at ¶ 18 and 19, and *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959).

{¶ 49} Appellant's arguments as to insufficient notice, procedural irregularities, and the permissive or mandatory nature of the penalty imposed lack merit. Accordingly, we overrule appellant's first assignment of error.

## VI. Third Assignment of Error - Costs of Administrative Hearing

{¶ 50} In his third and final assignment of error, appellant argues the common pleas court erred when it determined the Commission has the authority to promulgate a rule assessing the costs of an administrative hearing to a licensee.

{¶ 51} Appellant contends the Commission lacks the authority to impose such costs as it is outside the authority the General Assembly granted to the Commission. A challenge to an administrative agency's rulemaking authority is a question of law and, therefore, we exercise de novo review. *Vargas v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-872, 2012-Ohio-2735, ¶ 8; *Ohio Historical Society* at 471.

{¶ 52} "The purpose of administrative rule-making is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency. In other words, administrative agency rules are an administrative means for the accomplishment of a legislative end." *Nelson v. Mohr*, 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 14, citing *Carroll v. Dept. of Adm. Servs.*, 10 Ohio App.3d 108, 110 (10th Dist.1983). Administrative rules cannot add or subtract from the legislative enactment. *Id.*, citing *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Admr., Bur. of Emp. Servs.*, 21 Ohio St.3d 5, 10 (1986). Additionally, administrative rules cannot exceed the rulemaking authority delegated by the General Assembly. *Id.*, citing *Sterling Drug, Inc. v. Wickham*, 63 Ohio St.2d 16, 19 (1980).

{¶ 53} Under R.C. 3769.03, the Commission "shall prescribe the rules and conditions under which horse racing may be conducted and may issue, deny, suspend, diminish, or revoke permits to conduct horse racing as authorized by sections 3769.01 to 3769.14 of the Revised Code." The Commission enacted Ohio Adm.Code 3769-7-44(A) which states in part "the cost of such witnesses and all other necessary costs of the hearing shall be borne by the licensee found in violation." Appellant argues that assessing the costs of an administrative hearing does not qualify as "the rules and conditions under which horse racing may be conducted." Thus, appellant argues the rule conflicts with R.C. 3769.03 because it impermissibly adds to the legislative enactment.

{¶ 54} In construing a grant of administrative power from a legislative body, both the intention of that grant of power and the extent of the grant must be clear, and, if there is doubt, the doubt must be resolved against the grant of power. *League of United Latin Am. Citizens v. Kasich,* 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 48, citing *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 40.

{¶ 55} Here, appellant points to the plain language of R.C. 3769.03 and argues assessing the costs of an administrative hearing is not reasonably related to "the rules and conditions under which horse racing may be conducted." We agree.

{¶ 56} The General Assembly has expressly authorized the recovery of costs of an administrative hearing by the administrative agency in specific situations. For example, R.C. 4741.22, which governs the state veterinary medical licensing board, expressly permits the veterinary board, after conducting a hearing pursuant to R.C. Chapter 119, to "assess any holder of a license, permit, or registration the costs of the hearing conducted under this section if the board determines that the holder has violated any provision for which the board may impose a civil penalty under this section."

{¶ 57} Similarly, R.C. 3905.14 applies to administrative hearings conducted by the Ohio Department of Insurance. If the superintendent determines a violation has occurred under the statute, the superintendent may "[a]ssess administrative costs to cover the expenses incurred by the department in the administrative action, including costs incurred in the investigation and hearing processes." R.C. 3905.14(D)(2).

{¶ 58} Both R.C. 4741.22 and 3905.14 contemplate administrative hearings conducted pursuant to R.C. Chapter 119. Thus, it is clear the General Assembly knows

how to specifically authorize the recovery of costs in an administrative setting. *See Columbus Check Cashers, Inc. v. Rodgers*, 10th Dist. No. 08AP-149, 2008-Ohio-5498, ¶ 14. If the General Assembly had intended to allow the Commission to recover the costs of its own hearings from nonprevailing parties, it would have provided so expressly. *Id.*

{¶ 59} Instead, the structure created by the General Assembly under R.C. 3769.091 allows the Commission to delegate certain powers to the track Stewards, including the imposition of certain penalties. However, that same statute further provides "[a]ny fine or suspension may be appealed to the commission." R.C. 3769.091. There is no mention of costs. Where a statute provides a right to an administrative appeal within an agency and lists specific penalties but does not provide for an allocation of the costs of that appeal, the agency cannot then promulgate a rule to impose an award of hearing costs to the agency. *See, e.g., Vargas* at ¶ 13 ("administrative rules may not add to or subtract from a legislative enactment"), citing *Cent. Ohio Joint Vocational School*, at 10.

{¶ 60} In response, the Commission asserts because the General Assembly delegated it the power to issue rulings against licensees, the delegation incorporates the power to asses the costs of the hearing. Thus, the Commission argues, the costs of an appeal are part of the penalty of violating a rule, and the Commission has the authority to assess penalties to rule breakers. We find the Commission's argument unconvincing.

{¶ 61} R.C. 3769.091 permits the track Stewards to "suspend licenses for not to exceed one year and to impose fines not to exceed one thousand dollars for any violation of the rules or orders of the commission." Rather than granting the Stewards unlimited discretion in assessing penalties against its rule violators, R.C. 3769.091 enumerates particularized sanctions. The General Assembly chose not to include the costs of the hearing as one of those penalties. R.C. 3769.03 permits the Commission to "impose, in addition to any other penalty imposed by the commission, fines in an amount not to exceed ten thousand dollars." Again, the General Assembly chose not to include an award of hearing costs. Given that the General Assembly has shown it will statutorily authorize an administrative agency to recover the costs of its hearings in certain circumstances, the Commission's rule granting costs to the Commission under the guise of a penalty is an unreasonable usurpation of the legislative function. *See, e.g., Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, ¶ 18.

{¶ 62} The Commission further argues that, as a matter of general policy, costs are a part of every adjudicatory system, relying on both Civ.R. 54(D) and R.C. 2947.23. We disagree.

{¶ 63} First, R.C. 2947.23 allows the imposition of costs of the criminal prosecution as part of the sentence. Because the assessment of costs in criminal cases is statutory, this argument does not support the Commission's position.

{¶ 64} Second, Civ.R. 54(D) provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." Civ.R. 54(D) clearly places the award of costs within the discretion of the court. *See, e.g., Friday v. Rice*, 38 Ohio App.3d 113, 114 (10th Dist.1987). While administrative agencies may exercise quasi-judicial powers and may share some similar attributes of a court, "they are not courts, and under the Ohio Constitution, they cannot be considered as such." *League of United Latin Am. Citizens* at ¶ 52, citing *Application of Milton Hardware Co.*, 19 Ohio App.2d 157, 160 (10th Dist.1969). The Commission does not provide any authority to suggest administrative agencies have the discretion to impose costs upon administrative appellants absent an express grant of statutory authority. Additionally, the Commission can point to no other administrative agency that has promulgated a rule assessing the costs of the administrative hearing to a nonprevailing party. We are not persuaded by the Commission's policy argument.

{¶ 65} Thus, because the General Assembly chose not to expressly grant the Commission the authority to recover costs and it has demonstrated its willingness to do so for other administrative agencies, we will not read R.C. 3769.03 as conferring the implied grant of authority to the Commission to recover administrative hearing costs. Therefore, we agree with appellant that the Commission's promulgation of Ohio Adm.Code 3769-7-44(A) exceeded the grant of authority from the General Assembly to "prescribe the rules and conditions under which horse racing may be conducted." R.C. 3769.03.

{¶ 66} Accordingly, we sustain appellant's third assignment of error.

## VII. Disposition

{¶ 67} The common pleas court did not abuse its discretion in affirming the Commission's order that appellant violated Ohio Adm.Code 3769-8-01 and related rules,

as reliable, probative, and substantial evidence supports that order, nor did it err in determining the order is in accordance with law with respect to the issues of notice, procedural matters at the administrative level, and the penalty imposed. However, the common pleas court erred in concluding Ohio Adm.Code 3769-7-44(A) does not exceed the rulemaking authority of the Commission. Having overruled appellant's first and second assignments of error and sustained appellant's third assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand with instructions to reverse the portion of the Commission's order requiring appellant to pay the costs of the hearing.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

CONNOR and O'GRADY, JJ., concur.

———————————